# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

ANDREW TARGUM, an individual;
ERIKA TARGUM, an individual;
ANDREW S. TARGUM, P.C., a New York corporation;
ANDREW SCOTT TARGUM, P.C., a New York corporation;
TARGUM, BRITTON & TOLUD, LLP, a New York limited liability partnership;
and IRWIN SEEMAN, an individual,

      Plaintiffs,

v.

CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership;
MATTHEW G. WEBER, an individual;
LORRAINE WEBER, an individual;
and JOHN DOE NO. 1; an individual,

      Defendants.

_____/

## AMENDED COMPLAINT FOR DAMAGES

Plaintiffs, **Andrew Targum**, an individual; **Erika Targum**, an individual; **Andrew S. Targum, P.C.**, a New York corporation; **Andrew Scott Targum, P.C.**, a New York corporation; and **Targum, Britton & Tolud, LLP**, a New York limited liability partnership; and **Irwin Seeman**, an individual (collectively referred to herein as "Plaintiffs" or "The Clients"), pursuant to the federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961 *et seq.*) (the "RICO Act" or "RICO"), The Computer Fraud and Abuse Act (18 U.S.C. § 1030) (the "CFA Act"), and New York common law; hereby sue Defendants, **Citrin Cooperman & Company, LLP**, a New York limited liability partnership; **Matthew G. Weber**, an individual; **Lorraine Weber**, an individual; and **John Doe No. 1**, an individual (collectively, the "Defendants").  As grounds therefor, Plaintiffs allege the following:

## PRELIMINARY STATEMENT

1.      This litigation arises from the accountant-client relationship that existed between The Clients, on the one hand; and Citrin Cooperman & Company, LLP ("CITRIN") and Matthew G. Weber ("WEBER"), on the other.  Despite all standards of professionalism and legality, CITRIN and WEBER – with the assistance, support, and complicity of the other defendants named in this action along with other unnamed and yet-unidentified accomplices – purposefully lied to The Clients; put The Clients in grave economic, as well as legal, danger; and disregarded The Clients' interests in favor of their own interests.

2.      While The Clients thought they were dealing with reputable and honorable professionals working at a highly-respected accounting firm, The Clients were actually the unknowing victims of a long-running fraudulent and criminal scheme perpetrated by a vicious firm, a backstabbing professional, and a collection of other professionals who knew their role in the scheme and played it well, even when a cover-up was necessary.

3.      Unbeknownst to The Clients, CITRIN and WEBER, in preparing The Clients' tax filings, were grossly under-reporting The Clients' taxable income -- sometimes by as much as 90% -- and providing The Clients false documentation to mislead and outright defraud them.  At times, CITRIN and WEBER even failed to file any tax returns at all for The Clients while assuring The Clients that the returns had been filed and that The Clients' interests were protected.  In addition, CITRIN and WEBER took funds provided to them by The Clients earmarked for paying The Clients' tax liabilities and converted those funds for personal use.

4.      As a result of CITRIN and WEBER's fraud, The Clients are now facing in excess of $2,000,000 in fees and penalties being assessed by the Internal Revenue Service, the New York State Department of Taxation and Finance, the New York State Workers' Compensation

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Board, and the New York City Department of Finance, as well as incurring mounting legal fees as they deal with the turmoil this has caused them – all because The Clients put their faith, trust, and belief in what CITRIN and WEBER represented to them, which has turned out to be as misguided a decision as they could have made.

5.      The Clients are not the only ones who woefully misplaced their trust in CITRIN and WEBER, as several other clients of CITRIN and WEBER's -- explained in greater detail below and including, but not limited to, Jordan Bardach, Imagine Marketing Group, LLC, and the children of Werner and Faith Lippe (collectively, "the Other Victims of CITRIN") -- likewise had their trust abused as they also fell victim to CITRIN and WEBER's predatory acts.

6.      With each act undertaken, each misrepresentation put forth, each "red flag" ignored, and each dollar stolen over the years, it apparently became easier and easier for CITRIN and WEBER to continue their wrongful ways to the point that CITRIN now actually blames the victims for the harms they have suffered at CITRIN and WEBER's hands.

## PARTIES, JURISDICTION AND VENUE

### THE PARTIES

7.      Plaintiff, Andrew Targum, is an individual residing in New York, NY; is *sui juris*, and at all times material hereto was a principal of Andrew S. Targum, P.C., a New York corporation; Andrew Scott Targum, P.C., a New York corporation; and Targum, Britton & Tolud, LLP, a New York limited liability partnership.

8.      Plaintiff, Erika Targum, is an individual residing in New York, NY; is *sui juris*, and at all times material hereto was the wife of Andrew Targum.

9.      Plaintiff Andrew S. Targum, P.C. is a New York corporation with its principal place of business in New York, NY.

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

10.     Plaintiff Andrew Scott Targum, P.C. is a New York corporation with its principal place of business in New York, NY.

11.     Plaintiff Targum, Britton & Tolud, LLP is a New York limited liability partnership with its principal place of business in New York, NY.

12.     Andrew Targum, Erika Targum, Andrew S. Targum, P.C., Andrew Scott Targum, P.C., and Targum, Britton & Tolud, LLP are hereinafter collectively referred to as "TARGUM."

13.     Plaintiff, Irwin Seeman ("SEEMAN"), is an individual residing in Wheatley Heights, NY; is *sui juris*, and is a non-attorney former employee of Andrew Targum's law firm.

14.     Defendant, Citrin Cooperman & Company, LLP ("CITRIN"), is a New York limited liability partnership with its principal place of business at 529 Fifth Avenue, New York, NY 10017.

15.     Defendant, Matthew G. Weber ("WEBER"), is an individual residing in Oceanside, New York; and is *sui juris*.  At all times material hereto, WEBER was a practicing certified public accountant and was a Partner at CITRIN.

16.     Defendant, Lorraine Weber, is an individual residing in Oceanside, New York; is *sui juris*, and at all times material hereto was the wife of Matthew G. Weber.

17.     Defendant, John Doe No. 1 ("JOHN DOE NO. 1"), is an individual over the age of 18, is *sui juris*, and is the person who prepared documents including the February 27, 2007 document identified below in Paragraph 42.  JOHN DOE NO. 1 is further believed to have been a co-conspirator with WEBER and CITRIN at times material to the scheme described herein.

18.     In addition to those persons and entities set forth as Defendants herein, there are other parties who interacted with The Clients' files at CITRIN.  As of the date of filing this

pleading, The Clients know that the following CITRIN Partners, employees, and agents are among those who interacted with The Clients' files at CITRIN:

| NAME | ROLE/TITLE AT CITRIN |
|---|---|
| WEBER | Partner |
| Michael J. Lester | Partner |
| David Kells | Chief Operating Officer |
| Thomas Grohs | Valuation and Forensic Services |
| Elda Solla | Administrative Assistant |
| Vera Fici | Administrative Assistant |
| JOHN DOE NO. 1 | *<<unknown>>* |

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treatises of the United States.  This Court has supplemental jurisdiction over the New York common law claims pursuant to 28 U.S.C. § 1337.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this district.

## GENERAL FACTUAL ALLEGATIONS

### WEBER'S PROFESSIONAL CREDENTIALS

21.     WEBER is, and at all times material hereto has been, a certified public accountant.

22.     On or about August 1, 2004, WEBER was admitted as a practicing accountant, and a Partner, at CITRIN.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

23.     At all times material hereto, WEBER was a practicing accountant and a Partner at CITRIN.

### CITRIN'S PROFESSIONAL PROFILE

24.     According to its own marketing materials, CITRIN is an independent accounting, tax, and consulting firm with offices in New York, New Jersey, Connecticut, Pennsylvania, and the Cayman Islands.   With nearly 300 professionals and over 450 total employees on its employee roster; and having grown its annual revenue from $18,000,000 to approximately $115,000,000 over the past twelve years, CITRIN ranks amongst the top 10 largest accounting firms in New York City.   As this case demonstrates, that rampant and apparently unchecked growth came at a cost – a lack of proper institutional control which allowed this fraudulent scheme to go unchecked for years despite obvious red flags waving in front of CITRIN's management relating to the conduct of both CITRIN's Partners and staff.

25.     CITRIN offers its professional services in three core areas: (1) Attest and Assurance, (2) Tax Compliance and Research Services, and (3) Consulting and Specialty Services.

26.     CITRIN touts itself as a firm that operates under a "*team-based approach*" whose "*vision is to enhance the business value and personal lives of our clients, through our expert advice and passion in everything we do.*"   Additionally, as stated on the CITRIN web site, a major tenet of CITRIN's professional philosophy is to "*work hard to be trusted partners and understand that lasting success comes by working together.*"

27.     Among the "trusted partners" with whom WEBER worked was Gary M. Karlitz ("Karlitz") who, at all times material hereto, was a practicing accountant and a Partner at CITRIN.   Karlitz was the practice leader of the Valuation Services, Forensic Services, and

Forensic Accounting Group at CITRIN and was responsible for overseeing WEBER as his direct, but not only, supervisor.

28.     Housed within CITRIN's Valuation and Forensic Services Group is a team of professionals -- WEBER among them -- who tout themselves as experts in the realm of fraud investigation.  Karlitz, WEBER, and others at CITRIN claim that the firm's ability to sniff out fraud is based on their ability to "*provid[e] valuable insights obtained from hands-on experience*."  Presumably, the experience to which CITRIN cites in this regard is its ability to investigate the fraudulent activities of others, not an ability to commit a fraud of its own.

29.     Moreover, CITRIN places a great value on its professional reputation and protecting that reputation -- seeking at all times to avoid any potential embarrassment that might come to CITRIN as a result of its representatives' actions.  As this fraud has been publicly exposed, CITRIN has been revealed for what it really is – ruthless, vicious, and apparently ignorant of what its Partners and employees do under the CITRIN name year after year.

<u>THE PROFESSIONAL RELATIONSHIP BETWEEN THE PARTIES</u>

30.     Commencing in at least 2003, WEBER prepared and filed The Clients' city, state, and federal income taxes.

31.     In early 2005, several months after WEBER had joined CITRIN as a Partner, WEBER retained TARGUM'S law firm, Targum, Britton & Tolud, LLP's ("TBTLLP"), to represent WEBER in a civil lawsuit styled <u>Cederbaum v. Financial Appraisal Services, Ltd. and Matthew Weber</u>, Nassau County [NY] Supreme Court - Index No. 04758/2005, in which WEBER was sued for accounting malpractice.

32.     WEBER's installment as a Partner at CITRIN was a confirmation of WEBER's professional skills and served as a comfort to TARGUM in representing him in the lawsuit.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

33.     WEBER expressed to TARGUM that having TBTLLP represent WEBER would benefit not only his personal interests but also CITRIN's interests as well, as CITRIN would thus not have to incur any financial expense defending the professional actions of one of its Partners and the defending the reputation of the firm.

34.     Rather than pay TARGUM attorneys' fees for the professional services TARGUM's firm was rendering to WEBER in the Cederbaum matter, WEBER proposed that they trade their firms' professional services with one another: WEBER, as a Partner at CITRIN, would provide The Clients CITRIN's professional accounting services in exchange for TBTLLP's legal services -- all without them charging one another for the work being done.

35.     Though no fees were specifically paid by TARGUM for the professional services they were receiving, WEBER stated that no such payments were necessary; as both TARGUM and WEBER/CITRIN were receiving fair compensation from one another in the form of the mutual exchange of their services.

36.     In addition, SEEMAN was regularly billed by CITRIN for the professional services he received.

37.     WEBER and The Clients never entered into a formal written retainer agreement. Instead, as Partners of their respective firms, TARGUM and WEBER entered into an oral contract for the exchange of services, and all parties provided professional services to the other consistent with that understanding.

38.     This is not unique to The Clients and CITRIN.  CITRIN does not require a Partner who joins CITRIN and brings with him/her to CITRIN clients with whom the Partner has a pre-existing accountant-client relationship to enter into a formal written retainer agreement with the pre-existing client.  An example of this is discussed in the matter styled *Joseph S. Barbagallo v.*

*Marcum LLP v. Citrin Cooperman & Company, LLP,* U.S. District Court - E.D.N.Y. - Case No. 1:11-cv-01358-JBW-VVP, wherein CITRIN and one of its new tax Partners provided services for a client without a formal engagement letter, or even the client's knowledge, and the client expressed "surprise" that a firm other than the firm with which his accountant had previously been affiliated (Marcum LLP) sent him a bill.

39.     TBTLLP represented WEBER; and CITRIN represented The Clients.  WEBER's authority as a representative Partner at CITRIN to offer, and subsequently provide, CITRIN's services was never questioned, as WEBER openly and freely utilized every aspect of CITRIN's resources.

40.     WEBER expressly and implicitly represented to The Clients that he was conflict free and engaged in protecting The Clients' tax and corporate interests.

41.     Moreover, WEBER's position as a Partner at CITRIN served as a justification why The Clients agreed to let WEBER represent their tax interests and, over time, expand his role as their representative, to the extent circumstances required it.

42.     CITRIN and WEBER represented and advised The Clients in connection with at least the following personal and complex business matters: (a) state tax filings, (b) federal tax filings, (c) corporate formations, and (d) local business/tax filings.  Attached hereto as **Exhibits "A" - "H"** is a compilation of documents evidencing the following types of professional services WEBER and others at CITRIN provided to The Clients over the years:

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

| EXHIBIT | DATE | ELECTRONIC MAIL MESSAGE | | | PROFESSIONAL SERVICE PROVIDED |
| --- | --- | --- | --- | --- | --- |
| | | FROM | TO | SUBJECT | |
| A | Feb. 27, 2007 | WEBER | TARGUM | Maria's W-2 | Prepared federal corporate wage and tax statement |
| B | Jan. 16, 2008 | WEBER | TARGUM | 05 & 06 | Prepared federal and state personal tax returns |
| C | March 10, 2009 | Elda Solla | WEBER | Andrew Targum / Maria D'Onofrio | Prepared state and city withholding tax return for corporation |
| | March 10, 2009 | WEBER | TARGUM | | |
| D | Jan. 6, 2010 | Elda Solla | WEBER | *<<blank>>* | Prepared federal personal tax return |
| | Jan. 6, 2010 | WEBER | TARGUM | | |
| E | June 1, 2010 | Elda Solla | WEBER | Targum | Prepared state corporate tax declaration |
| | June 1, 2010 | WEBER | TARGUM | | |
| F | Oct. 8, 2010 | WEBER | TARGUM | TBT Amendment | Prepared Certificate of Amendment of TARGUM corporate entity registration |
| G | July 5, 2011 | Elda Solla | WEBER | 2Q 2011 | Prepared state corporate employment tax return |
| | July 5, 2011 | WEBER | TARGUM | | |
| H | July 26, 2011 | Elda Solla | WEBER | 941 | Prepared federal corporate quarterly tax return |
| | July 26, 2011 | WEBER | TARGUM | | |

43.   As the above-cited exhibits above demonstrate, The Clients were engaged in a general accountant-client relationship with CITRIN.  WEBER, in his capacity as a Partner at

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

CITRIN, confirmed that representation orally, through his actions, and in writing on numerous occasions. The Clients and CITRIN maintained a continuous and wide-ranging accountant-client relationship in connection with their tax and corporate activities at all times material hereto. During that time, The Clients relied upon WEBER's advice and trustworthiness and the reputation and integrity of CITRIN as his employer.

44. At all times during WEBER's representation of The Clients, WEBER acted with the apparent authority of CITRIN. In communications with The Clients, WEBER expressly confirmed that he would represent The Clients in his capacity as a Partner of CITRIN and implicitly confirmed the same by communicating with The Clients from and at his CITRIN office, using CITRIN's electronic mail server, CITRIN's letterhead, and CITRIN's telephone systems.

45. WEBER/CITRIN utilized CITRIN software and employees to provide The Clients and the Other Victims of CITRIN with a full array of accounting services. The Clients received e-mails from WEBER which contained alleged work product from WEBER and from CITRIN employees other than WEBER, including Vera Fici, Elda Solla, and JOHN DOE NO. 1, regarding The Clients' tax and corporate matters. *See*, *e.g.*, **Exhibits "A" - "H"** attached hereto.

46. Over the years, The Clients and WEBER had meetings at CITRIN's Manhattan office, and WEBER introduced The Clients to other CITRIN Partners, identifying The Clients as clients of the firm.

47. WEBER and CITRIN regularly, if not solely, communicated with The Clients using CITRIN letterhead, CITRIN's e-mail account, CITRIN's telephone systems, facsimile lines, and instructed The Clients to wire funds to CITRIN-identified bank accounts. *See*, *e.g.*, **Exhibit "I"** attached hereto.

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

48.     From The Clients' perspective, they had a typical relationship with their accountants.  Everything appeared to be within the normal course of business, and The Clients had no idea at that time that WEBER and CITRIN were, and had been, altering and submitting under-reported tax returns for The Clients, failing to file necessary tax returns for The Clients, creating fraudulent documents and/or converting The Clients' funds.

### THE WIRE TRANSFERS TO CITRIN-IDENTIFIED BANK ACCOUNTS

49.     As mentioned above, numerous wire transfers were made at WEBER's request to CITRIN-identified bank accounts bearing CITRIN's name and address.

50.     On April 5, 2005, shortly after WEBER had arrived as a Partner at CITRIN, WEBER sent TARGUM an e-mail (using his CITRIN e-mail account) instructing TARGUM to wire funds needed to pay New York State and New York City taxes to a CITRIN-identified bank account at Sterling National Bank, thusly:

> **We have to send NYS/NYC $ for you for 1st quarter 2005 $9,500. We will make a wire payment like the IRS payment.**  *It's the best way.  I will let you know what to do tomorrow.*  **Its [sic.] ok to use my Citrin Cooperman a/c.  They are ok now.  I will set this up for your PC for future payments.**  *You just have to register.  Saves a lot of paperwork.*

*See*, **Exhibit "J"** attached hereto (emphasis added).

51.     Upon information and belief at the relevant time, CITRIN maintained accounts at Sterling National Bank, including CITRIN's Operating Account.

52.     The account to which TARGUM was instructed to wire the funds clearly bore CITRIN's name and business address:

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case



53.     In fact, the dozens of wire transfers that The Clients made at WEBER's behest virtually all have the same key common characteristics:

BNF Name:    Matt[hew] G. Weber c/o Citrin Cooperman
BNF Address: 529 Fifth Avenue
                    New York, NY 10017

54.     The following is a copy of an actual wire transfer confirmation provided to The Clients after they made a wire transfer in accordance with WEBER's instructions:

55.     While WEBER initially instructed TARGUM to wire funds to a CITRIN account at Sterling National Bank (622 Third Avenue, New York, NY 10017), a September 19, 2006 e-mail to TARGUM from WEBER on the CITRIN e-mail server bearing WEBER's CITRIN

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

signature block and business card instructed TARGUM that he was to henceforth wire funds to a different CITRIN account at Signature Bank, 565 Fifth Avenue, New York, NY 10017.  *See*, **Exhibit "K"** attached hereto.

56.     WEBER instructed The Clients, both orally and via CITRIN's electronic mail server, that the above-referenced bank accounts were CITRIN accounts utilized for clients to pay their taxes.  Based on WEBER's instructions, The Clients sent a minimum of eighty (80) bank wire transfers to CITRIN.  Attached hereto as **Exhibit "L"** is a chart stating the date, Originator, Origination Bank, Receiving Bank, Beneficiary, and Amount as to each of those wire transfers.

57.     The Clients were justifiably confident that they were transacting business with CITRIN, as clients, in the normal course of business; and that the accounts to which they had wired their funds were indeed CITRIN-identified bank accounts, bearing CITRIN's name and CITRIN's business address, with the transfer details having been given over CITRIN's e-mail.

## THE FRAUDULENT SCHEME PERPETRATED UPON THE CLIENTS

58.     Although The Clients did not know it at the time, their taxable income, when it was actually being reported, was being grossly under-reported to the governmental taxing authorities -- sometimes by as much as 90% -- and The Clients were provided false documentation under the CITRIN logo to mislead and outright defraud them.

59.     WEBER, in the course of his employment at CITRIN, using CITRIN's computer systems and with the assistance of other CITRIN employees, often prepared two sets of tax filings: one that was provided to The Clients, and a very different one that was filed with the appropriate governmental taxing authority.  The copy that was provided to The Clients -- which showed it was prepared by WEBER as a representative of CITRIN -- contained the proper factual information provided to WEBER by The Clients, which they were told was the

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

information that had been provided to the taxing authority.  Meanwhile, the copy CITRIN actually filed with the appropriate governmental taxing authorities (if one was filed at all) grossly under-reported The Clients' taxable income and contained other material factual misrepresentations of which The Clients were unaware.

60.     As indicated above, WEBER/CITRIN also routinely failed to file tax returns on behalf of The Clients when required to do so while telling them that he had filed the necessary paperwork.

61.     The Clients relied on the professional work product of CITRIN and followed all professional guidance given by WEBER and others at CITRIN whom WEBER referenced provided services to The Clients.

62.     WEBER regularly instructed The Clients to wire funds to the CITRIN-identified bank account so that CITRIN could then disburse from its bank account the necessary amount of funds to satisfy The Clients' tax liability in connection with the tax filings.

63.     What was actually happening, though, is that CITRIN and/or WEBER took the funds provided to them by The Clients earmarked for paying The Clients' tax liabilities and converted those funds for CITRIN's and/or WEBER's own use.

64.     For example, WEBER would prepare and provide The Clients a copy of a tax return showing that they were liable for paying $20,000.00 to a taxing authority; and The Clients would then wire $20,000.00 to a CITRIN-identified bank account to satisfy the tax obligation.

65.     Rather than file a return showing that The Clients were liable for paying $20,000.00 to the taxing authority, WEBER would either file nothing on The Clients' behalf or would file with the taxing authority a second tax return that he and others at CITRIN had prepared which showed The Clients were only liable for paying $5,000.00 to the taxing

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

authority; and CITRIN and WEBER would retain the other $15,000.00-$20,000.00 and apply it to their own personal uses.

<u>**Communications with The Clients and Taxing Authorities**</u>

66.    WEBER, as a Partner and representative of CITRIN, would regularly communicate with the taxing authorities on behalf of The Clients -- doing so in writing on CITRIN's letterhead or through CITRIN's electronic mail servers and orally using CITRIN's telephone systems.  *See*, **Composite Exhibit "M"** attached hereto.  In the course of those communications, WEBER represented to the taxing authorities that, in his capacity as a Partner of CITRIN, he represented The Clients in connection with their tax matters.

67.    In fact, in these communications with governmental representatives, WEBER often referred to himself, CITRIN, and The Clients as a collective "we" – embracing the team-based approach and ideal of togetherness under which CITRIN promotes itself on its own website:



*See*, *e.g.*, **Exhibit "N"** attached hereto.

68.     WEBER's communications with the governmental agencies were made with CITRIN's awareness and utilized CITRIN's corporate accounts to send the documents.

69.     The subject of the communications WEBER was having with the taxing authorities did not always necessarily match up with the information contained in the paperwork provided to The Clients -- something of which The Clients were totally unaware.

70.     At no time relevant hereto were The Clients aware that two drastically different sets of tax filings had been prepared on their behalf, that tax returns that should have been filed for them were actually never filed, or that the funds they had wired to CITRIN-identified bank accounts had been applied anywhere other than to satisfy their tax obligations.

## Forged Power of Attorney

71.     Moreover, The Clients were unaware that WEBER and CITRIN were proffering, purportedly on behalf of The Clients, other false documents to the taxing authorities to conceal the fraudulent scheme.  For example, in August 2008, WEBER, as a representative of CITRIN, prepared a false Power of Attorney that was signed by WEBER and two other CITRIN employees (Thomas Grohs and Elda Solla) but which bore forged signatures purporting to be those of Andrew Targum and Erika Targum, *to wit*:



* * *

and used it to further the fraudulent scheme.  Attached hereto as **Exhibit "O"** is a copy of the August 2008 Power of Attorney complete with the Transmission Verification Report memorializing that the document was sent via facsimile from CITRIN's Manhattan office to the New York State Department of Taxation and Finance.

72.     This document allowed WEBER as a representative of CITRIN to further conceal the fraudulent scheme and was supported by two other CITRIN employees.  Because the signatures of Andrew Targum and Erika Targum are forged, it is impossible for Mr. Grohs or Ms. Solla to have acknowledged, as "two disinterested individuals," the person(s) signing the document (*i.e.*, Mr. and Mrs. Targum).

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

### IRS-Filed Tax Returns Showed Different Address from Clients' Copies

73.     The tax returns WEBER and CITRIN routinely filed with the Internal Revenue Service falsely listed "M. Weber - Citrin Cooperman, 529 5th Avenue, 2nd Floor, New York, NY 10017" as Andrew Targum and Erika Targum's "home address," while the "copies" WEBER and CITRIN provided Mr. and Mrs. Targum -- copies which WEBER and CITRIN purported were true and correct copies of the documents that were filed with the Internal Revenue Service -- showed Mr. and Mrs. Targum's actual home address.  *See*, **Exhibit "P"**

74.     Had The Clients known this was happening, they would not have engaged CITRIN as their accountants, and The Clients would have retained different accountants to provide them with tax and corporate advice.

### CITRIN'S COMPUTER SOFTWARE AND DATABASES ARE DESIGNED TO PREVENT A FRAUD LIKE THIS

75.     WEBER informed The Clients that all documents created on behalf of The Clients were created on CITRIN computers and utilized information generated from The Clients' computer(s).  This was confirmed to The Clients on several occasions, when documents e-mailed by WEBER were originated and labeled from other employees of CITRIN.

76.      CITRIN maintains a very sophisticated computer database containing, among other files, its clients' tax returns.  To prepare the tax returns for filing each year, CITRIN inputs data into those returns.  For continuing clients, some of the data, like their names and addresses, do not change often from year to year; other data, like income and deductions, are expected to change.

77.     Each person who has access to the CITRIN computer system is given a unique identifying "user name," which he or she types on to the screen before using the computer.

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

78.     The computer system keeps track of exactly when each tax return is modified, and by whom.

79.     The computer system can then generate "Activity Reports" that show each date and time each tax return was modified and which user account made each of the modifications.

80.     At all times material hereto, WEBER had a unique "user name" which he used to access CITIRN's computer system.  So too did all of the other CITRIN employees who prepared, or assisted in preparing, The Clients' tax returns.

81.     CITRIN's computer database contains numerous documents and electronic metadata demonstrating that WEBER and others at CITRIN prepared tax returns for The Clients during the time period referenced above.

82.     For example, the following images captured from CITRIN's computer system show that WEBER -- or other CITRIN employees or agents under his control and/or with his authorization -- accessed the CITRIN computer database to prepare tax documents for The Clients under the presumed client identifier "WEBTARG - Targum, Andrew":



SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com



83.     Additionally, the following image captured from CITRIN's computer system shows that CITRIN Partner Michael J. Lester, CPA -- or other CITRIN employees under his control and/or with his authorization -- accessed the CITRIN computer database and reviewed documents prepared for The Clients, not once, but at least twice:



84.     Similarly, CITRIN's computer systems contain numerous documents and electronic metadata (*e.g.*, correspondence, electronic mail, telephone logs, facsimile confirmations, wire transfers) demonstrating that WEBER and others at CITRIN communicated

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

either directly or indirectly with, or prepared electronic documents that were sent to, The Clients concerning CITRIN's preparation of those tax documents on behalf of The Clients.

85.     In operating and maintaining its computer databases and systems, CITRIN had an obligation to review both the usage of CITRIN computers as well as the "Activity Reports" to monitor and prevent fraud or other crimes of dishonesty from being perpetrated with its electronic systems.

86.     Failure to satisfy its obligation in this regard would allow CITRIN Partners, employees, agents, and representatives with access to the computer databases and systems the ability to engage in wrongful conduct that could fraudulently, maliciously, intentionally, recklessly, or criminally harm the rights and interests of others, including The Clients.

87.     At all times material hereto, WEBER was a Partner at CITRIN, and CITRIN had a duty and the ability to supervise and control WEBER.

88.     Similarly, JOHN DOE NO. 1 was an employee at CITRIN, and CITRIN had a duty and the ability to supervise and control JOHN DOE NO. 1.

89.     CITRIN knew or should have known that its Partner, with assistance and vital compliance by other employees at CITRIN (including JOHN DOE NO. 1), was committing the crimes and misdeeds detailed herein; and CITRIN knew or should have realized at some point during the tenure of his fraudulent scheme that WEBER, the Partner of the firm, was using firm resources (both human and non-human) and spending firm time committing such a massive and wide-spread fraud.

90.     Moreover, CITRIN knew or should have known that its Partner was conspiring with other CITRIN employees to defraud clients because CITRIN should have had reasonable

protections in place to make sure that its employees, including its Partners, are never in a position to help one another steal from a client.

91.     As noted above, CITRIN has several in-house self-described experts in the field of fraud investigations, and the firm advertises that circumstances such as those described herein should be exposed with proper due diligence.  As partner David A. Anderson, CPA, CFE states on the CITRIN website: "*It is almost impossible for management to engage in such [fraudulent] behavior without involving one or more employees . . . .   This fraudulent behavior becomes known to other employees.*"   By CITRIN's own words, Vera Fici, Elda Solla, Thomas Grohs, Michael Lester, and/or JOHN DOE NO. 1, if not additional CITRIN employees who surrounded and supported WEBER, were all presumably aware of WEBER's actions.

92.     CITRIN was aware that WEBER and other CITRIN Partners and employees were utilizing CITRIN computers to review, prepare, and send false and altered documents that were fraudulently given to The Clients and governmental authorities (including through the use of a trackable CITRIN Federal Express corporate account); and CITRIN recklessly ignored that information and did nothing to halt or address that practice.

93.     Several of the above-referenced mailings were sent using CITRIN's Federal Express corporate account.  *See, e.g.*, **Exhibit "Q"** hereto.  These mailings were identified as being sent by "M. Weber, CPA", they were shipped from CITRIN's Manhattan office using CITRIN's pre-printed Federal Express labels, and they were billed to CITRIN through CITRIN's Federal Express corporate account.

94.     By the repeated use of the CITRIN Federal Express corporate account to send documents on behalf of The Clients, CITRIN either knew WEBER and others at CITRIN were providing their professional services to The Clients or should have known that an inordinate

amount of mailings not marked with proper client identifiers were being sent to governmental taxing authorities -- something that CITRIN either recognized and ignored or should have recognized but failed to.

95.     To the extent WEBER's and other CITRIN employees' activities stood outside the usual course of their duties for clients at the firm, several Partners and employees at CITRIN, such as Vera Fici, Elda Solla, Thomas Grohs, Michael Lester, and/or JOHN DOE NO. 1, were aware and should have questioned why they were preparing, scanning, and sending documents without properly charging to The Clients or active CITRIN client files the time and expense of those activities.

96.     Again, as Mr. Anderson states on the CITRIN website: "*Even if management is not committing fraud, its failure to communicate disapproval of employee fraud will lead employees to believe that those at the top are indifferent to fraud*."

### WEBER, ON CITRIN'S BEHALF, ASSURES THE CLIENTS THAT ALL IS TAKEN CARE OF

97.     At multiple times during the tenure of their accountant-client relationship, WEBER assured The Clients that all of their accounting and tax needs were being properly taken care of by himself and others at CITRIN.

98.     For example, in December 2010, TARGUM was concerned that WEBER and CITRIN were not devoting enough time and attention to TARGUM's accounting needs.

99.     On December 15, 2010, TARGUM sent an e-mail to WEBER (at WEBER's CITRIN e-mail address) expressing his concerns about their professional relationship.  WEBER responded (from his CITRIN e-mail address), apologized for the "*crazy couple of weeks*" WEBER had been enduring with a few other professional projects, and assured TARGUM that

TARGUM's accounting needs would be met in a timely manner.  *See*, **Exhibit "R"** attached hereto.

100.    At the time WEBER made these statements to The Clients, he knew they were false and that The Clients would rely on his assurances that their interests were being protected. These statements were made just days after CITRIN Partner Michael Lester had accessed the Targum file on CITRIN's computer system, as described above in Paragraph 83.

101.    Plaintiffs justifiably relied on the assurances WEBER made as a CITRIN Partner, and they were thereby induced to continue their relationship with CITRIN and WEBER -- not knowing that they were actually being lied to and that their money was being converted by CITRIN and WEBER for improper use.

### CITRIN IS AWARE OF WEBER'S CRIMINAL ACTIVITY

102.    In February 2012, a lawsuit was filed against CITRIN and WEBER in the Supreme Court of the State of New York in the County of New York in an action styled *Jordan Bardach and Imagine Marketing Group, LLC v. Matthew G. Weber and Citrin Cooperman & Company LLP*, Index No. 101661/2012.

103.    According to the Amended Complaint filed in the *Bardach* lawsuit, Mr. Bardach and his corporate entity were CITRIN clients whose tax and corporate matters were being handled at CITRIN by WEBER and who were the victims of the same fraudulent tax filing scheme that WEBER and CITRIN have perpetrated upon The Clients.

104.    Upon information and belief, CITRIN had been forewarned by Mr. Bardach's counsel several weeks, if not months, before the *Bardach* lawsuit was filed as to the fraud and professional negligence WEBER and CITRIN had perpetrated upon the *Bardach* plaintiffs.

105.    CITRIN was unquestionably put on notice on or before the date on which CITRIN was served with process in the *Bardach* lawsuit that WEBER had engaged in criminal

acts and professional activities rising to the level of defrauding CITRIN clients in the same exact manner The Clients were defrauded.

106.   To be clear, WEBER's acts, and possibly other CITRIN employees' acts in connection therewith, are criminal.  At a minimum, WEBER and other CITRIN employees committed the following violations:

     (a)   Filing false tax returns, which is punishable by fine and up to three years in prison;

     (b)   Offering a False Instrument for Filing with Intent to Defraud a Public Authority in the First Degree, New York Penal Law, Section 175.35, a Class E Felony; and

     (c)   Scheming to Defraud in the Second Degree, New York Penal Law, Section 190.60, a Class A Misdemeanor.

107.   CITRIN either did nothing or did not do enough to put an end to the harmful, criminal actions and representations WEBER was making, and had made, on CITRIN's behalf.

108.   Rather than accepting blame for the wrongful and criminal acts perpetrated by its Partner and the harm caused to the victims of those acts, CITRIN swiftly filed a counter-suit against Mr. Bardach and his corporate entity in which CITRIN sought to further victimize the victims.  As shown below, this appears to be CITRIN's standard operating procedure.

### OTHER LITIGATION DEMONSTRATING CITRIN'S AWARENESS OF THE HARM THAT CAN BE CAUSED WHEN CITRIN FAILS TO KEEP ITS HOUSE IN ORDER

109.   The *Barbagallo* and *Bardach* cases are not the only lawsuits in which CITRIN's internal oversight of its employees' activities and client status have been questioned.

110.   In March 2007, a seasonal tax professional named William Schemitsch, who had been hired by CITRIN to assist with the preparation of CITRIN clients' tax returns during the busy 2006 and 2007 tax seasons, resigned from his position as a temporary worker with CITRIN.

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

111.    Following Mr. Schemitsch's resignation, CITRIN accused him of having tampered with client information housed within CITRIN's computer databases, which, in sum and substance, consisted of Mr. Schemitsch changing the name of a client's dependent child to "Butthead" and changing a client's occupation to "Bread Winner," among other trivial pranks, in CITRIN's internal databases.

112.    CITRIN swiftly conducted its investigation and, before having gathered all relevant facts but satisfying itself that something amiss had taken place at its firm, filed a lawsuit against Mr. Schemitsch in this Court in the matter styled *Citrin Cooperman & Co., LLP v. William Schemitsch*, Case No. 07-cv-3269-DLC.   The jurisdictional nexus to this Court in the *Schemitsch* lawsuit was not diversity of citizenship; rather, it was simply an alleged violation of the Computer Fraud and Abuse Act.

113.    The *Schemitsch* lawsuit was filed by CITRIN a mere 36 days after Mr. Schemitsch resigned.   Clearly, when it comes to CITRIN's low-ranking, seasonal independent contractors, CITRIN acts swiftly and with great vigor to remedy harm they might have caused in CITRIN's name.

114.    To the contrary, CITRIN does not appear to hold its Partners to the same high standard, as CITRIN -- as of the date of this filing -- has not filed any civil action against WEBER or any other CITRIN Partners or employees for the harm described herein, despite having known for at least ten months of the crimes and misdeeds causing harm to Bardach, The Clients, and others.

115.    Notwithstanding the foregoing, CITRIN cannot deny that as a matter of corporate policy, when it becomes aware of criminal activity within its ranks, CITRIN knows it must

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

publicly hold itself accountable and ensure that its clients are put on notice of potential criminal issues occurring at CITRIN.

### CITRIN SHOULD HAVE, BUT DID NOT, SCRUTINIZE WEBER AND HIS COLLEAGUES MORE CLOSELY TO PREVENT IMPROPRIETIES AND FAILURES TO PROPERLY SUPERVISE

116.    Aside from the foregoing, CITRIN had additional reasons to keep a watchful eye over WEBER and those with whom he worked at CITRIN.

117.    In 2005, shortly after he joined CITRIN as a Partner, WEBER informed TARGUM that he (WEBER) was under great financial distress.

118.    As CITRIN Partner Brian J. Hoffman wrote in a published article titled *Breaking the Fraud Triangle: Keys to Deterrence*: "*Employees subjected to outside financial pressures are more likely to look for illegal ways to maintain their existing lifestyle.*"

119.    During this same time period, WEBER delivered to Karlitz -- his direct supervisor in the Valuation Services, Forensic Services, and Forensic Accounting Group -- multiple checks made payable to Karlitz himself.   At a minimum, WEBER provided Karlitz a check in the amount of $2,500.00 in May 2005 and a second check in the same amount of $2,500.00 in June 2005, both of which were issued from the CITRIN-identified bank account to which WEBER had previously instructed The Clients to wire their funds -- Client funds which are now missing.

120.    Payments from WEBER to Karlitz for any reason should have created a heightened duty on CITRIN's behalf to supervise WEBER from the outset of their professional relationship together.

### WEBER GOES TO ARUBA

121.    Shortly after the *Bardach* lawsuit was filed, WEBER went on a vacation to Aruba, presumably to seek a safe haven from the comeuppance about to fall upon him.

122.    At the time WEBER went to Aruba, he was still employed as a Partner at CITRIN and had not been disciplined by CITRIN in any way.

123.    At the time WEBER went to Aruba, The Clients still had no idea they had been victimized by a fraudulent scheme that would include assessments against them in excess of $2,000,000 in fees and penalties by local, state, and federal taxing authorities.

124.    On February 21, 2012, TARGUM sent WEBER an e-mail (at WEBER's CITRIN e-mail address) stating: *"Can you have your office email me your letters to IRS re:2008 and 2010 W-2 and [spread] sheets for 2007-2009 tax returns w[ith the] letter."*  TARGUM was requesting that CITRIN provide TARGUM copies of certain documents CITRIN had prepared on TARGUM's behalf.  *See*, **Exhibit "S"** attached hereto.  WEBER's CITRIN e-mail address was still functioning on that date, and WEBER was still employed as a Partner at CITRIN.

125.    TARGUM did not receive from WEBER or anyone else with whom he had dealt at CITRIN a response to his February 21, 2012 request.

126.    Upon information and belief, WEBER's employment with CITRIN was terminated approximately one week after TARGUM's February 21, 2012 request.

### CITRIN'S MASS MAILING TO CLIENTS CONCEDING WEBER'S FRAUD

127.    On or about February 28, 2012, CITRIN sent to The Clients a generic, mass mailed letter addressed to "Dear Sir or Madam" in which CITRIN conceded, *inter alia*, "*it appears that [WEBER] may have failed to file certain of your tax returns and may have failed to make related payments to taxing authorities.*"  *See*, **Exhibits "T" and "U"** attached hereto.

128.    By its generically-addressed nature (*i.e.*, "Dear Sir or Madam"), The Clients presume CITRIN sent similar copies of the standardized February 28, 2012 letter to many clients who, like The Clients and Bardach, had been victimized by WEBER's misdeeds and CITRIN's

failure to either stop or identify the harmful acts its employee(s) and Partner(s) had been committing.

129.     By March 2012, the scheme that had been perpetrated became apparent to The Clients.

130.     As a result of the fraud, The Clients are now facing in excess of $2,000,000 in fees and penalties being assessed by the Internal Revenue Service, the New York State Department of Taxation and Finance, and the New York State Workers' Compensation Board, as well as incurring mounting legal fees as they deal with the turmoil this has caused them.

**CITRIN THREATENED SEEMAN OVER ALLEGED UNPAID CLIENT RECEIVABLES**

131.     Just one week after sending SEEMAN the February 28, 2012 letter -- in which CITRIN denied that he had "*ever been a client of [Citrin]*" and denied that the "*services concerning [his] taxes, tax payments, or possibly other matters*" were rendered to him by WEBER as a CITRIN client,



**COOPERMAN**
Attest & Assurance | Tax Compliance & Research | Specialty Consulting

February 28, 2012

Irwin Seeman
Wheatley Heights, NY

Re:  Work performed for you by Matthew G. Weber

Dear Sir or Madam:

It has just come to our attention that Matthew G. Weber, who was formerly affiliated with our firm, has been independently providing you with services concerning your taxes, tax payments, or possibly other matters, in violation of our partnership agreement, and without you having ever been a client of this firm and without the knowledge or authorization of our firm.

Mr. Weber has advised us of information from which it appears that he may have failed to file certain of your tax returns and may have failed to make related payments to taxing authorities. We thought it appropriate to advise you of this situation at the first opportunity.  We would suggest that you immediately consult with an independent accountant and/or attorney.

Sincerely yours,

Joel A. Cooperman, CPA

David Kells (CITRIN's Chief Operating Officer) sent SEEMAN a March 9, 2012 letter threatening to refer him to CITRIN's collections attorney and demanding payment of "*an outstanding balance due to [CITRIN] of $2,500.00 for services rendered at [SEEMAN's] request*," *to wit*:



*See*, **Exhibits "U"** (February 28, 2012 letter) and **"V"** (March 9, 2012 letter) attached hereto.

132.   Not only did Mr. Kells' March 9, 2012 letter to SEEMAN specifically reference "*your account*," SEEMAN had previously been provided over two dozen invoices from CITRIN that reflect SEEMAN's "Client No." and demands for payment to CITRIN for services rendered on his behalf.  *See*, **Composite Exhibit "W"** attached hereto.  In fact, exactly two months before Joel Cooperman's February 28, 2012 letter claiming SEEMAN had never been a CITRIN client, CITRIN had drafted a December 28, 2011 Credit Memorandum and applied to SEEMAN's account two client credits in the amounts of $1,262.50 and $1,237.50, respectively.  *Id*.

133.   Clearly, CITRIN's internal policies and procedures of documenting who is, and who is not, a client of the firm are critically flawed or have been compromised.  Any allegation by CITRIN that The Clients were not clients of CITRIN and that services were not provided or rendered to them as clients of CITRIN are false.

### WEBER INDICTED FOR GRAND LARCENY AND FAILING TO FILE INCOME TAX RETURNS

134.    In June 2012, a grand jury in New York County, New York indicted WEBER on three counts of grand larceny in the second degree for violating New York State Penal Law §155.40(1).  The June 27, 2012 indictment is styled *The People of the State of New York against Matthew Weber*, Supreme Court of the State of New York in the County of New York, Case No. 03020-2012, Criminal Justice Tracking Number 65553575Z.  *See*, **Exhibit "X"** attached hereto.

135.    In addition to the foregoing, WEBER was also indicted by the grand jury on one count of repeatedly failing to file personal income and earnings taxes in violation of New York State Tax Law §1808(a).

136.    During the course of the grand jury proceeding, Joel Cooperman testified as to what he knew of WEBER's criminal activity including, upon information and belief, how long he knew it, to whom the crimes were reported (if anyone), and how CITRIN reacted to learning that one of its Partners had committed crimes of dishonesty that go to the heart of CITRIN's business operations.

137.    According to the indictment, WEBER stole from TARGUM property in an amount exceeding Fifty Thousand Dollars ($50,000.00).  Similarly, the indictment held that WEBER stole from Bardach property in an amount exceeding Fifty Thousand Dollars ($50,000.00).  In addition, the indictment also held that WEBER stole from a receivership established in the names of Werner and Faith Lippe property exceeding Fifty Thousand Dollars ($50,000.00).

138.    Werner Lippe is the notorious Westchester, New York "Jeweler to the Stars" who was convicted in October 2010 of savagely murdering his wife, Faith Lippe, and incinerating her body in an oil drum -- thus leaving their then-teenage children without a mother while they

awaited the sentencing of their father.  In March 2011, Werner Lippe was sentenced to serve a minimum of 25 years in prison for his crime.  As a result of Mr. Lippe's crime, a receivership was established to provide for Mr. and Mrs. Lippe's teenage children.

139.    Through court proceedings, CITRIN was appointed the Receiver for the Lippe receivership.    WEBER was one of the professionals at CITRIN who was entrusted with protecting the Lippe children's assets.  According to the indictment, WEBER abused that trust and stole funds from the receivership created for the Lippe children.

140.    As noted above, CITRIN -- as of the date of this filing -- has not filed any civil action against WEBER despite having known for at least ten months of the crimes and misdeeds causing harm to Bardach, The Clients, the Lippe receivership, and others.  The only civil actions CITRIN has brought to flex its corporate muscle have been those aimed at further victimizing the victims of CITRIN's acts and omissions.

### THE AUGUST 2, 2012 DEMAND LETTER TO CITRIN

141.    On August 2, 2012, undersigned counsel, on behalf of The Clients, served a very detailed demand letter upon CITRIN that set forth all of the allegations of wrongdoing identified in this Amended Complaint and provided CITRIN several hundred pages of documents in support thereof.    *See*, **Exhibit "Y"** attached hereto (enclosures omitted).  In the spirit of professionalism and courtesy, undersigned counsel gave CITRIN thirty (30) days to respond to the allegations set forth in the August 2, 2012 demand letter.

142.    On August 30, 2012, CITRIN filed a lawsuit against TARGUM in the Supreme Court of the State of New York in the County of New York in an action styled *Citrin Cooperman & Company LLP v. Andrew Targum, et al.*, Index No. 653051/2012.  A copy of the Complaint is attached hereto as **Exhibit "Z"** for this Court to see the approach CITRIN has taken to falsely

attack the victims in this case.  In that lawsuit, there is currently a pending Motion against CITRIN to Dismiss the Complaint and for Sanctions.

143.    The CITRIN lawsuit does not mention the WEBER fraud against The Clients nor WEBER's indictment for having stolen large sums of money from, *inter alia*, The Clients.  In fact, the lawsuit does not mention any WEBER activity or accountability.

144.    Moreover, the CITRIN lawsuit so closely mirrors the attack CITRIN levied upon Bardach that the CITRIN lawsuit against TARGUM even contains the same misspellings and mis-identified monikers that were in the counterclaim CITRIN filed against Bardach. Apparently, CITRIN contends that both Bardach and Targum, along with their corporate entities, separately and without each other's knowledge hatched the same exact conspiratorial scheme to deprive CITRIN of WEBER's time, attention, and loyalty.

145.    Unlike in the *Bardach* case -- in which CITRIN carefully alleged that "*Bardach and IMG did not interact with any accountants, partners, or employees of Citrin Cooperman except for Weber*" (emphasis added) -- CITRIN merely alleged in the *Citrin v. Targum* lawsuit that "*[TARGUM] did not interact with any accountants or partners of Citrin Cooperman, except for their private, unauthorized dealings with Weber.*"  By omitting from its Complaint against TARGUM the words "or employees," CITRIN tacitly admitted that TARGUM and his file did interact with several CITRIN employees other than WEBER, including but not limited to, Vera Fici, Elda Solla, Thomas Grohs, Michael Lester and/or JOHN DOE NO. 1.

146.    Quite tellingly, CITRIN's lawsuit against TARGUM fails to mention that WEBER has been indicted and does not join WEBER as a party-defendant in the lawsuit despite his central role in the supposed conspiracy against CITRIN.

147.    The Clients have retained separate counsel to dispose of the CITRIN lawsuit.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

### CITRIN IS VICARIOUSLY LIABLE FOR WEBER'S AND HIS COLLEAGUES' CRIMES AND MISDEEDS

148.   There is no question that CITRIN is responsible and should be held accountable for WEBER's conduct.  WEBER used his position of trust, as a Partner of CITRIN, to leverage and successfully conduct and conceal all the criminal activity for several years against many firm clients.

149.   There is likewise no question that CITRIN is responsible and should be held accountable for the conduct of the other CITRIN employees, such as Vera Fici, Elda Solla, Thomas Grohs, Michael Lester and/or JOHN DOE NO. 1, who worked with, supported, or knew about and did nothing to stop WEBER from carrying out the criminal acts.

150.   During the entirety of WEBER's scheme to defraud and steal funds from The Clients, WEBER was a Partner of CITRIN, used his position at CITRIN to commit crimes against The Clients and others under the guise of providing them with proper accounting representation, and used CITRIN identified bank accounts to siphon funds away from The Clients and others.

151.   It may seem surprising that CITRIN has sat idly by while one of its Partners used CITRIN-identified bank accounts to steal hundreds of thousands of dollars from client funds over a period of several years, but it is nothing less than stunning that CITRIN now asserts that it has no responsibility for its Partner's and employees' actions under these circumstances and has the temerity to sue the victims of that fraud; without having the professionalism to mention in those public filings that its former Partner has been indicted based largely on the testimony of Bardach and TARGUM.  In fact, upon information and belief, it was not CITRIN who first reported WEBER's criminal conduct; rather, it was Bardach who discovered and reported him to the authorities.  Bardach has filed his own civil suit, separate and apart from The Clients.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

152.    The Clients bring this action to hold CITRIN, WEBER, and the additional defendants liable for abusing their positions of trust, misappropriating for their own use The Clients' funds, and for putting The Clients in the financially devastated position in which they now find themselves.

153.    The Clients have duly performed all of their duties and obligations, and any conditions precedent to The Clients bringing this action have occurred, have been performed, or else have been excused or waived.

154.    To enforce their rights, The Clients have retained undersigned counsel and are obligated to pay counsel a reasonable fee for its services, for which Defendants are liable as a result of their bad faith and otherwise.

## COUNT I – BREACH OF FIDUCIARY DUTIES
### [AGAINST CITRIN AND WEBER]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

155.    The commercial relationship between The Clients and both CITRIN and WEBER constituted a relationship in which deep trust, dependence, confidence, counsel and reliance was placed in and existed with CITRIN and WEBER by The Clients, such that a fiduciary relationship was established.  Developing this fiduciary relationship is consistent with the relationship typically developed between a client and an accountant/tax preparer.

156.    CITRIN and WEBER were aware of The Clients' reliance, dependency upon, and trust in CITRIN and WEBER.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

157.   CITRIN and WEBER breached their fiduciary duty to The Clients by disregarding standard practices and procedures and by ignoring the "red flags" about WEBER's conduct as it related to the manner in which he handled The Clients' tax and corporate matters.

158.   As a result of the foregoing breaches of fiduciary duty committed against The Clients by CITRIN and WEBER, The Clients have suffered actual and special damages.

159.   The Clients seek an award of damages, including punitive damages, against CITRIN and WEBER based on CITRIN and WEBER's willful and malicious conduct against The Clients, orchestrated for a period of approximately seven years.  This course of conduct comprised not just a single instance of willful and malicious conduct, but as stated above, constituted an ongoing and systematic pattern of acts, any one of which would independently support an award of punitive damages and the cumulative effect of which demonstrates egregious and outrageous behavior.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; and MATTHEW G. WEBER, an individual; jointly and severally, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.  Plaintiffs reserve the right to seek leave of court to assess punitive damages against CITRIN and WEBER, jointly and severally.

### COUNT II – PROFESSIONAL NEGLIGENCE
[AGAINST CITRIN AND WEBER]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

160.   The Clients retained CITRIN and WEBER to perform professional tax accounting services related to The Clients' tax liabilities to various governmental authorities and render corporate assistance in connection with those tax accounting services.

161.    All of the acts and omissions performed by WEBER were done within the scope of his employment as a certified public accountant at CITRIN.

162.    CITRIN and WEBER collectively owed a duty to The Clients to provide them sound, reliable advice and to refrain from making to them any false representations of fact in the course of handling their tax filings.

163.    Moreover, as the tax accountants for The Clients, CITRIN and WEBER owed a duty of "due diligence" to these clients.  This duty, as more fully defined by the American Institute for Certified Public Accountants, required CITRIN and WEBER, prior to signing tax returns, to investigate any "red flags" and either: (i) determine that they were innocuous, or (ii) resolve the issue presented.  CITRIN and WEBER were also required to "promptly" correct any known errors in the immediate or prior returns.

164.    As explained in greater detail above, CITRIN and WEBER breached the duties they owed to The Clients.

165.    As a direct and proximate result of CITRIN and WEBER's breach of duty, The Clients have suffered damage.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; and MATTHEW G. WEBER, an individual; jointly and severally, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.  Plaintiffs reserve the right to seek leave of court to assess punitive damages against CITRIN and WEBER, jointly and severally.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

## COUNT III – VIOLATION OF 18 U.S.C. § 1030
## ("COMPUTER FRAUD AND ABUSE ACT")
### [AGAINST CITRIN AND WEBER]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

166.   This cause of action asserts a claim against CITRIN and WEBER for violations of 18 U.S.C. § 1030(a)(2)(C) and 1030(a)(4) ("The Computer Fraud and Abuse Act") for exceeding authorized access to a protected computer to obtain information, for knowingly doing so with an intent to defraud, and for furthering fraudulent activity thereby to obtain something of value.

167.   CITRIN and WEBER, without authorization or exceeding authorization conditionally granted to them, accessed, knowingly and with intent to defraud The Clients, a protected computer.

168.   In the course of preparing The Clients' tax returns, CITRIN and WEBER had access to TARGUM's computers, including but not limited to the Quickbooks applications and other electronic spreadsheets that housed the information that was supposed to be inserted into the tax return filings.

169.   CITRIN and WEBER used this unlawful access to further their intended fraud by, *inter alia*, using and manipulating information in electronic format to alter filings with government agencies.  The altered electronic data has been permanently corrupted.

170.   The computer or computers that CITRIN and WEBER accessed are "protected computer(s)" as defined in 18 U.S.C. § 1030(e)(2)(B) because it or they are used in interstate or foreign commerce or communication, including sending and receiving electronic mail, accessing and interacting with the World Wide Web, electronically filing documents with state and federal courts, and housing information needed for preparing federal and state income tax returns which

are electronically filed with the IRS and/or tax authorities of various states by using the computer or computers.

171.     While CITRIN and WEBER were able to obtain information by intentionally accessing TARGUM's protected computers, they exceeded their authorized access by altering information on TARGUM's computers, software utilized by TARGUM, and work-product created by TARGUM that CITRIN and WEBER were not entitled to alter.

172.     Likewise, CITRIN and WEBER intentionally furthered a fraud by knowingly exceeding their authorized access to TARGUM's protected computers.

173.     As a consequence of CITRIN and WEBER exceeding their authority to TARGUM's protected computers, The Clients have suffered damage far in excess of $5,000.00.

174.     The Clients asked CITRIN to cooperate and tell The Clients the full scope of CITRIN's and WEBER's involvement.  CITRIN has refused to cooperate, forcing The Clients to incur the expense of determining what documents were falsified, what computer entries were still valid and correcting unauthorized alterations.  This detection and restoration of The Clients' computerized information has been extremely disruptive to both The Clients' personal lives as well as their business lives.  The Clients intend to learn in discovery which addition parties and causes of actions exist.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; and MATTHEW G. WEBER, an individual; jointly and severally, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

## COUNT IV – VIOLATION OF CIVIL RICO ACT (18 U.S.C. § 1962(c))
### [AGAINST CITRIN, WEBER, AND JOHN DOE NO. 1]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

175.    This cause of action asserts claims against CITRIN, WEBER and JOHN DOE NO. 1 for violations of 18 U.S.C. § 1962(c) for conducting the affairs of an unlawful enterprise (the "RICO Enterprise") through the pattern of racketeering activity described herein.

176.    At times material hereto, The Clients, CITRIN, WEBER and JOHN DOE NO. 1 were each a "person" as that term is defined in 18 U.S.C. § 1961(3).

177.    At times material hereto, The Clients were and are each a "person injured in his or her business or property by reason of a violation of" RICO within the meaning of 18 U.S.C. § 1964(c).

178.    At times material hereto, CITRIN, WEBER, and JOHN DOE NO. 1 were, and are, each a "person" who conducted the affairs of the RICO Enterprise through the pattern of racketeering activity described herein.   While CITRIN, WEBER and JOHN DOE NO. 1 participated in the RICO Enterprise, they each had an existence separate and distinct from the enterprise.   Further, the RICO Enterprise is separate and distinct from the "pattern of racketeering activity" in which CITRIN, WEBER and JOHN DOE NO. 1 have engaged.

179.    At times material hereto, CITRIN, WEBER and JOHN DOE NO. 1 were associated with, operated and/or controlled the RICO Enterprise, and CITRIN, WEBER and JOHN DOE NO. 1 participated in the operation and management of the affairs of the RICO Enterprise through a variety of actions.  CITRIN, WEBER and JOHN DOE NO. 1's participation in the RICO Enterprise was necessary for the successful operation of their scheme.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

<u>**THE RICO ENTERPRISE**</u>

180.    Section 1961(4) of the RICO Act defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

181.    The following persons, and others presently unknown, have been members of and constitute an "enterprise" within the meaning of RICO: (a) CITRIN; (b) WEBER, and (c) JOHN DOE NO. 1.

182.    The RICO Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) and constitutes a group of "persons" associated together for the common purpose of employing the multiple deceptive, abusive, and fraudulent acts described herein.

183.    CITRIN, WEBER, and JOHN DOE NO. 1, collectively with one another as well as with others presently unknown – some of whom are employees of CITRIN – using CITRIN's computer systems, prepared two sets of tax filings: one that was provided to The Clients, and a very different one that was filed with the appropriate governmental taxing authority.  The copy that was provided to The Clients contained the proper factual information provided to CITRIN and WEBER by The Clients, which The Clients were told was the information that had been provided to the taxing authority.  Meanwhile, the copy CITRIN actually filed with the appropriate governmental taxing authorities (if anything was filed at all) grossly under-reported The Clients' taxable income.

184.    The RICO Enterprise was an ongoing enterprise that engaged in, and whose activities affected, interstate commerce by, among other things, affecting taxes collected by several governmental taxing authorities in several states throughout the United States.

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

185.    The overarching purpose of the RICO Enterprise was for each of its members to profit from the funds wired by The Clients to CITRIN that had been earmarked for payment to the appropriate taxing authorities.  Upon information and belief, CITRIN, WEBER and others presently unknown (such as JOHN DOE NO. 1) themselves accomplished this goal by converting the funds supplied by The Clients and misappropriating those funds for personal use as described above.

### THE RICO PREDICATE ACTS

186.    Section 1961(1) of RICO provides that "racketeering activity" is, among other things:

(a)    Any act indictable under any of the provisions of 18 U.S.C. § 1341 (mail fraud);

(b)    Any act indictable under any of the provisions of 18 U.S.C. § 1343 (wire fraud); and

(c)    Any act indictable under any of the provisions of 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity); and

187.    As set forth below and throughout this Amended Complaint, CITRIN, WEBER, JOHN DOE NO. 1, and others presently unknown have engaged in the affairs of the RICO Enterprise through multiple acts which serve as the predicate for The Clients' RICO claim.

### Mail Fraud

188.    CITRIN, WEBER, JOHN DOE NO. 1, and others presently unknown, in violation of 18 U.S.C. § 1341, placed in post offices or official depositories of the United States Postal Service matter and things to be delivered by Postal Service, caused matters and things to be delivered by commercial interstate carrier, and received matters and things from the Postal Service or commercial interstate carriers, including but not limited to: (a) false tax returns sent to governmental taxing authorities, (b) tax returns provided to The Clients which were materially

- 43 -

different from the tax returns actually filed with governmental tax authorities, (c) tax returns provided to The Clients which were never actually filed with governmental tax authorities despite CITRIN and WEBER's statements to the contrary, and (d) correspondence from CITRIN, on CITRIN letterhead, to various governmental taxing authorities in which false statements of fact were made and which permitted the fraudulent scheme to persist and grow.

189.    Included among the false and misrepresentative documents sent via U.S. Mail, and those which permitted the fraudulent scheme to persist and grow, are the following:

> Andrew and Erika Targum's 2005 IRS Form 1040, showing that it was prepared by "Citrin Cooperman & Company, LLP";

> June 21, 2009 letter from CITRIN, on CITRIN letterhead, to the Internal Revenue Service, discussing tax notice sent regarding TARGUM;

> November 2, 2010 letter from CITRIN, on CITRIN letterhead, to the Internal Revenue Service, discussing meeting and telephone calls conducted on TARGUM's behalf;

> January 20, 2011 letter from CITRIN, on CITRIN letterhead, to the Internal Revenue Service, enclosing 2007 and 2008 joint income tax returns for TARGUM and requesting all future communications relating to those filings be directed to WEBER at CITRIN;

> January 21, 2011 letter from CITRIN, on CITRIN letterhead, to the Internal Revenue Service, enclosing 2009 joint income tax return for TARGUM and requesting all future communications relating to that filing be directed to WEBER at CITRIN;

> March 1, 2011 letter from CITRIN, on CITRIN letterhead, to the Internal Revenue Service, discussing overpayment notice and referring to TARGUM as "my client";

> May 16, 2011 letter from CITRIN, on CITRIN letterhead, to the New York State Workers Compensation Board - Bureau of Compliance, enclosing forms prepared on TARGUM's behalf and requesting abatement of monetary penalty assessed to TARGUM; and

> December 19, 2011 letter from CITRIN, on CITRIN letterhead, to the New York State Department of Taxation and Finance, enclosing forms

prepared for TARGUM and requesting abatement of enforcement action against TARGUM.

190.   CITRIN, WEBER, and JOHN DOE NO. 1's misrepresentations and acts were knowing and intentional and were made with the intent to create and manage the RICO Enterprise's scheme to defraud and manipulate The Clients and misappropriate or manipulate the funds supplied by The Clients that had been earmarked for payment of their presumed tax liabilities.

191.   Additionally, in violation of 18 U.S.C. § 1341, CITRIN, WEBER and JOHN DOE NO. 1 conducted exchanges, payments, and monetary transfers using the U.S. Mail concerning the receipt and distribution of the proceeds of CITRIN and WEBER's improper conversion of The Clients' funds.

## Wire Fraud

192.   CITRIN, WEBER, JOHN DOE NO. 1, and others presently unknown, in violation of 18 U.S.C. § 1343, transmitted and received by wire, internet connection, or other electronic media, matters and things relating to their deceptive campaign, including false tax returns, electronic mail messages and funds from The Clients that were supposed to be directed for payment of their presumed tax liabilities.

193.   Included among the false and misrepresentative documents sent or received via wire or electronic means, and those that helped foster the RICO Enterprise's deceptive campaign, are the following:

> ➢ The 80 wire transfers received by CITRIN from The Clients which are delineated in Exhibit "L" hereto.

> ➢ February 27, 2007 e-mail from WEBER to TARGUM, showing that WEBER and JOHN DOE NO. 1, an assistant of his at CITRIN, prepared TARGUM's W-2 form;

> ➢ August 11, 2008 falsified Power of Attorney;

➤ February 9, 2009 e-mail from TARGUM to WEBER, requesting preparation of Form 1099 tax filings;

➤ June 24, 2009 e-mail from TARGUM to WEBER, requesting preparation of Form K-1 tax filings; and

➤ June 1, 2010 e-mail exchange between WEBER, TARGUM, and Elda Solla, again evidencing knowledge and complicity of CITRIN and its employees.

194.   CITRIN and WEBER's misrepresentations and acts were knowing, intentional, and were made with the intent to create and manage the RICO Enterprise's scheme to defraud and manipulate The Clients by accepting funds intended for payment of presumed tax liabilities and misappropriating or manipulating those funds.

195.   Additionally, in violation of 18 U.S.C. § 1343, CITRIN, WEBER and others presently unknown conducted exchanges, payments, and monetary transfers using the wires concerning the receipt and distribution of the proceeds of CITRIN and WEBER's improper conversion of The Clients' funds.

**Monetary Transactions in Property Derived from Specified Unlawful Activity**

196.   CITRIN, WEBER, JOHN DOE NO. 1, and others presently unknown, in violation of 18 U.S.C. § 1957:

(a)   knowingly engaged in monetary transactions in criminally derived property of a value greater than $10,000 which was derived from specified unlawful activity; and

(b)   were engaged in the withdrawal, transfer or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution.

197.   Specifically, CITRIN, WEBER, JOHN DOE NO. 1, and others presently unknown knowingly accepted and exchanged funds from The Clients that was supposed to be

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

directed for payment of their presumed tax liabilities using either the U.S. Postal Service or wire transfers, or both.

### THE PATTERN OF RACKETEERING ACTIVITY

198.    As set forth herein, CITRIN, WEBER, JOHN DOE NO. 1, and others presently unknown have engaged in a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5), by committing or conspiring to commit at least two acts of racketeering activity, described above, within the past ten years.

199.    CITRIN, WEBER, JOHN DOE NO. 1, and others presently unknown have engaged in a scheme to defraud consumers, including The Clients, Bardach, and others, through fraudulent misrepresentations, knowing concealments, suppressions and omissions of material fact for the purpose of executing their scheme.

200.    CITRIN, WEBER, and JOHN DOE NO. 1's racketeering activities amount to a common course of conduct intended to deceive and harm customers such as The Clients.  Each such racketeering activity is related, has a similar purpose, involves the same or similar participants, and has similar results affecting similar victims, including The Clients.

201.    Plaintiffs' injuries were directly and proximately caused by CITRIN, WEBER, and JOHN DOE NO. 1's racketeering activity.

202.    The Clients have standing to sue CITRIN, WEBER and JOHN DOE NO. 1 under 18 U.S.C. § 1964(c) and to recover compensatory damages, treble damages, and the costs of this suit, including an award of reasonable attorneys' fees.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; MATTHEW G. WEBER, an individual; and JOHN DOE NO. 1, an individual, jointly and severally for an

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

amount within the jurisdictional limits of this court, including an award of interest, costs, attorneys' fees, and such other relief as this Court deems just and appropriate. Plaintiffs reserve the right to seek leave of court to assess punitive damages against CITRIN, WEBER and JOHN DOE NO. 1, jointly and severally.

## COUNT V – VIOLATION OF CIVIL RICO (18 U.S.C. § 1962(d))
### [AGAINST ALL DEFENDANTS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 and 175-202 above, and further allege:

203.    This cause of action asserts a claim against Defendants for violations of 18 U.S.C. § 1962(d) for conspiring to violate the other provisions of the RICO Act.

204.    Defendants conspired with one another, as well as other individuals and entities, to perpetrate upon Plaintiffs unlawful acts which violated the RICO Act or to perpetrate a lawful act by unlawful means, *to wit*: they made multiple misrepresentations of fact to The Clients in an effort to extract from The Clients funds intended for payment of The Clients' presumed tax liabilities, and they either committed or knowingly ignored the crimes and misdeeds of their fellow conspirators – all of which put Defendants' own pecuniary interest ahead of the Debtors' welfare and economic safety.

205.    When, during the tenure of the conspiracy, evidence arose that something about the professional services supposedly being provided by CITRIN and WEBER was amiss, Defendants would engage in a "cover up" to allow the scheme to continue.

206.    For example, when TARGUM became wary of the substandard level of service TARGUM was receiving from CITRIN and WEBER, WEBER assured TARGUM that all was fine and that the requested remedy was on the way.  *See*, Exhibit "R" hereto.

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

207.    Likewise, JOHN DOE NO. 1 would field telephone calls and electronic mail messages from The Clients and would provide them false information to "cover up" for CITRIN and WEBER.  For example, on multiple occasions on which TARGUM called WEBER on his CITRIN office phone number and reached WEBER's voicemail, TARGUM was redirected to the live voice of one of WEBER's fellow CITRIN employees, who represented to TARGUM that WEBER was purportedly out of the office working in another CITRIN office on that day.

208.    Additionally, Lorraine Weber knowingly accepted from her husband (WEBER) funds that were illegally obtained from The Clients, and she remained purposefully silent in the face of the fraudulent activity.

209.    Similarly, members of WEBER and Lorraine Weber's family accepted from WEBER and Lorraine Weber funds that were illegally obtained from The Clients, and those yet-unidentified family members remained purposefully silent in the face of fraudulent activity.

210.    In furtherance of their conspiracy, Defendants made to The Clients, or agreed to have someone make on their behalf, the false statements of fact detailed above.

211.    Defendants have both agreed to the overall objective of the conspiracy and have agreed to commit at least two predicate acts in furtherance of the conspiracy.

212.    As described above, Defendants objectively manifested, through words or actions, their agreement to participate in the conduct of the affairs of the RICO Enterprise through a pattern of racketeering activity.

213.    As a direct and proximate result of Defendants' conspiracy, The Clients have suffered damage.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; MATTHEW G.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

WEBER, an individual; JOHN DOE NO. 1, an individual; and LORRAINE WEBER, an individual, jointly and severally, for an amount within the jurisdictional limits of this court, including an award of interest, costs, attorneys' fees, and such other relief as this Court deems just and appropriate.  Plaintiffs reserve the right to seek leave of court to assess punitive damages against Defendants, jointly and severally.

## COUNT VI – COMMON LAW FRAUD
### [AGAINST CITRIN AND WEBER]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

214.    CITRIN and WEBER, by acts of both omission and commission, made false statements to The Clients concerning material facts about their tax returns, their tax liabilities, and the use of the funds The Clients wired to CITRIN and WEBER to pay for their anticipated tax liabilities.

215.    CITRIN and WEBER knew at the time the statements were made that the statements were false.

216.    CITRIN and WEBER intended that The Clients would be induced into action by relying upon the statements of fact made to them by CITRIN and WEBER.

217.    In the course of entrusting CITRIN and WEBER to properly handle their tax matters, The Clients reasonably and justifiably relied on the statements of fact made to them by CITRIN and WEBER.

218.    As a direct and proximate result of The Clients' reliance on the statements made to them by CITRIN and WEBER, The Clients have suffered damage.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; and MATTHEW

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

G. WEBER, an individual; jointly and severally, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.  Plaintiffs reserve the right to seek leave of court to assess punitive damages against CITRIN and WEBER, jointly and severally.

### COUNT VII – CIVIL CONSPIRACY
[AGAINST ALL DEFENDANTS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

219.   Defendants conspired with one another to perpetrate an unlawful act upon The Clients or to perpetrate a lawful act by unlawful means, *to wit*:

    (a)   Defendants made multiple misrepresentations of fact to The Clients in an effort to cover up the theft of The Clients' funds;

    (b)   Defendants prepared, or assisted in preparing, for The Clients unauthorized and false tax returns; and

    (c)   Defendants exceeded the authority they had to utilize the information contained in The Clients' computer systems in a manner that violates federal law

all of which put Defendants' own pecuniary interest ahead of The Clients' welfare and economic safety.

220.   In furtherance of their conspiracy, Defendants made to The Clients, or agreed to have someone make on their behalf, the false statements of fact detailed above.

221.   As a direct and proximate result of Defendants' conspiracy, The Clients have suffered damage.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; MATTHEW G. WEBER, an individual; JOHN DOE NO. 1, an individual; and LORRAINE WEBER, an

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

individual; jointly and severally, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.

## COUNT VIII – CONVERSION
### [AGAINST CITRIN AND WEBER]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

222.    At all times relevant hereto, The Clients were the lawful owners of the funds that were wired to CITRIN and WEBER to pay The Clients' tax liabilities.

223.    CITRIN and WEBER have interfered with The Clients' ownership and interest in that money.

224.    CITRIN and WEBER have converted The Clients' money to their own personal use, thereby causing The Clients' damage.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; and MATTHEW G. WEBER, an individual; jointly and severally, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.

## COUNT IX – NEGLIGENCE
### [AGAINST CITRIN AND WEBER]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

225.    CITRIN and WEBER collectively owed a duty to The Clients to provide them sound, reliable advice and to refrain from making to them any false representations of fact in the course of handling their tax filings and rendering corporate advice in connection therewith.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

226.    As explained in greater detail above, CITRIN and WEBER breached the duty they owed to The Clients.

227.    As a direct and proximate result of CITRIN and WEBER's breach of duty, The Clients have suffered damage.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; and MATTHEW G. WEBER, an individual; jointly and severally, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.  Plaintiffs reserve the right to seek leave of court to assess punitive damages against CITRIN and WEBER, jointly and severally.

## COUNT X – NEGLIGENCE AND WIRE TRANSFER LIABILITY
### [AGAINST CITRIN AND WEBER]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

228.    This is an action seeking damages based upon negligence and wire transfer liability relating to wrongful and improper wire transfers of The Clients' funds on account with CITRIN, which were conducted by CITRIN and WEBER.

229.    At all times material hereto, CITRIN and WEBER (by themselves and through others upon their direction) authorized and directed via wire instructions several wire transfers of The Clients' funds on account with CITRIN totaling hundreds of thousands of dollars (the "Wire Transfers").

230.    Pursuant to applicable law, CITRIN and WEBER owed a duty of care to The Clients to correctly and prudently process the Wire Transfers, subject to commercially reasonable security procedures.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

231.     CITRIN and WEBER breached their duty of care to The Clients by violating their own internal policies and procedures and by violating regulations within the accounting industry and other prudent and sound practices and procedures within the accounting industry, as more fully identified above.

232.     CITRIN and WEBER further breached their duty of care by lacking good faith in processing and/or effectuating the Wire Transfers based upon their actual and/or constructive knowledge of suspicious, fraudulent, and criminal activities relating to the tax returns being prepared by CITRIN and WEBER for The Clients.

233.     In effectuating the Wire Transfers, CITRIN and WEBER ignored suspicious, fraudulent, and criminal activities within CITRIN's internal computer systems and obvious "red flags" that required that the funds comprising the Wire Transfers remain with CITRIN and WEBER pending, among other things, full notification and disclosure of those illegal activities to the appropriate criminal authorities.

234.     Notably, CITRIN and WEBER knew about the suspicious activities and other material "red flags" prior to their decision to process the Wire Transfers, which thereby caused the funds to be transferred out of CITRIN's accounts for an improper purpose and to CITRIN and WEBER or third parties, where they were thereafter dissipated and were further converted.

235.     As a direct and proximate result of the above-cited breaches, The Clients have suffered damages in the amount of the value of the funds comprising the improper Wire Transfers.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; and MATTHEW G. WEBER, an individual; jointly and severally, for an amount within the jurisdictional limits of

this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.  Plaintiffs reserve the right to seek leave of court to assess punitive damages against CITRIN and WEBER, jointly and severally.

## COUNT XI – NEGLIGENT RETENTION AND SUPERVISION
### [AGAINST CITRIN]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

236.    This is an action seeking damages based upon CITRIN's negligent retention and/or supervision of its management and/or employees, including but not limited to, those employees and agents of CITRIN who were responsible for, *inter alia*, preparing and filing all of The Clients' city, state, and federal income taxes.

237.    At all times material hereto, CITRIN knew or should have known that its employees and agents -- including WEBER, Vera Fici, Elda Solla, Thomas Grohs, Michael Lester, Gary Karlitz and/or JOHN DOE NO. 1 and others -- were engaging in activities that were improper and perhaps illegal, including but not limited to:

      (a)    ignoring CITRIN's own internal policies and procedures;

      (b)    violating regulations within the accounting industry and other prudent and sound practices and procedures within the accounting industry; and

      (c)    utilizing company resources (both human and non-human), including trackable computers, telephones, photocopiers, electronic mail servers, mailing accounts, and office space to service people who CITRIN now claims were never clients of the firm.

238.    Additionally, CITRIN knew that WEBER's productivity and profitability as a Partner at CITRIN had plummeted and that, as a result thereof -- combined with the fact that WEBER was in financial distress -- WEBER and those with whom he worked at CITRIN needed

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

an increased measure of supervision and monitoring to prevent the very type of fraudulent and illegal activity about which CITRIN's Partners write published articles and counsel their clients to install necessary preventative measures.

239.    Likewise, CITRIN was well aware that WEBER had previously been sued for accounting malpractice, which itself should have caused CITRIN to increase the measure of the firm's supervision and monitoring of WEBER and those who regularly worked under his direction.

240.    CITRIN had an obligation to investigate and monitor its employees' activities; and, had it conducted even a reasonably diligent investigation, or indeed any monitoring of its Partners' and/or employees' activities, CITRIN would have discovered that its employees (including WEBER, JOHN DOE NO. 1, and others presently unknown) were, in fact, engaging in a scheme to defraud The Clients and the governmental taxing authorities to whom The Clients' false tax filings were submitted by WEBER and his co-workers.

241.    CITRIN had a duty to take steps to prevent or rectify the improper activities and conduct of their employees and agents and to safeguard The Clients' funds and legal interests. Such steps could have included:

> (a)    suspending or terminating at an earlier date the employment of WEBER and those officers, employees and agents who contributed to and/or assisted in preparing and filing factually incorrect tax returns for The Clients and converting the money provided by The Clients to pay anticipated tax liabilities;

> (b)    increasing supervision of those officers, employees and agents tasked with establishing, monitoring and maintaining CITRIN's computer databases and systems; and

> (c)    suspending or terminating at an earlier date the employment of those officers, employees and agents tasked

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

with establishing, monitoring and maintaining CITRIN's computer databases and systems.

242.   Rather than discharge its duties to The Clients, CITRIN turned a blind eye to, or failed to exercise reasonable means to discover and correct, active misconduct and negligence on the part of its employees, agents, and others and instead permitted them to:

(a)   file factually incorrect tax returns for The Clients;

(b)   defraud The Clients by telling them that tax returns had been filed on their behalf when no returns had actually been filed;

(c)   convert the money provided by The Clients to pay anticipated tax liabilities;

(d)   overlook the fact that CITRIN's computer databases were being misused and that "red flags" were waving in response to that wrongful conduct;

(e)   substantially assist WEBER and his co-workers in their fraudulent scheme.

243.   As a direct and proximate result of the negligent retention and/or supervision of its employees, agents, and others by CITRIN, The Clients suffered damages for which CITRIN is liable.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.  Plaintiffs reserve the right to seek leave of court to assess punitive damages against CITRIN.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

## COUNT XII – BREACH OF CONTRACT
### [AGAINST CITRIN AND WEBER]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

244.    The Clients entered into an oral agreement with CITRIN and WEBER (the "Agreement") under which CITRIN and WEBER were obligated, *inter alia*, to accurately and truthfully prepare and file all of The Clients' local, state, and federal tax filings as well as properly direct all funds transmitted by The Clients to CITRIN and WEBER to pay any and all tax liabilities The Clients might have in connection with their filings.

245.    The Clients have fully performed all of their obligations under the Agreement, except to the extent that such performance has been excused, prevented, hindered, frustrated and/or rendered useless by the acts and omissions of Defendants.

246.    As described above, Defendants have failed to fully perform their obligations under the Agreement and have thus breached the Agreement.

247.    As a direct and proximate result of Defendants' breach of the Agreement, The Clients have suffered damages.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; and MATTHEW G. WEBER, an individual; jointly and severally, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

### COUNT XIII – BREACH OF IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING
### [AGAINST CITRIN AND WEBER]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

248.    A covenant of good faith and fair dealing in the course of the contract performance is implicit in all contracts.

249.    The purpose of the implied covenant of good faith is to further an agreement by protecting the promise against a breach of the reasonable expectations and inferences otherwise derived from the agreement.  The covenant of good faith and fair dealing protects the bargained-for terms of the agreement.

250.    As referenced above in Paragraph 244, The Clients entered into an Agreement with CITRIN and WEBER under which CITRIN and WEBER were obligated, *inter alia*, to accurately and truthfully prepare and file all of The Clients' local, state, and federal tax filings as well as properly direct all funds transmitted by The Clients to CITRIN and WEBER to pay any and all tax liabilities The Clients might have in connection with their filings.

251.    The bargained-for terms of the Agreement included an agreement made by CITRIN and WEBER to engage in good faith practices, adhere to their professional obligations, and satisfy all applicable standards of accounting, free of manipulation and deception by CITRIN and WEBER.

252.    In contravention of these bargained-for terms, CITRIN and WEBER engaged in various unscrupulous acts with a purpose of defrauding The Clients by, *inter alia*, filing false tax returns, failing to file tax returns for The Clients when required to do so, and accepting wire transferred funds to pay for tax liabilities and misappropriating or manipulating the funds wired.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

253.    By reason of CITRIN and WEBER's above-described conduct, they have breached the covenant of good faith and fair dealing, which has caused The Clients substantial harm.

254.    The Clients have fully performed all of their obligations under the Agreement, except to the extent that such performance has been excused, prevented, hindered, frustrated and/or rendered useless by the acts and omissions of CITRIN and WEBER.

255.    As a direct and proximate result of CITRIN and WEBER's breach of the Agreement, The Clients have suffered damages.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership; and MATTHEW G. WEBER, an individual; jointly and severally, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.

## COUNT XIV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES
### [AGAINST CITRIN AND JOHN DOE NO. 1]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

256.    At all material times, WEBER owed The Clients a fiduciary obligation to discharge his professional duties in good faith, with the care that an ordinarily prudent accountant in a like position would exercise and in a manner reasonably believed to be in The Clients' best financial interests.

257.    WEBER breached the fiduciary duties he owed to The Clients by exhibiting a willful, reckless and/or grossly negligent disregard for the best financial interests of The Clients by filing false tax returns, failing to file tax returns for The Clients when required to do so, and

misappropriating, for his own personal benefit and with no legitimate or justifiable business purpose, funds that rightfully belonged to The Clients and which should have been directed to the appropriate taxing authorities to pay off The Clients' tax liabilities.

258.    WEBER's breach of the fiduciary duties he owed to The Clients actually and proximately caused financial injury to The Clients.

259.    CITRIN had actual and/or constructive knowledge and rendered substantial assistance in regard to WEBER's breach of his fiduciary duties to The Clients by:

(a)    ignoring its own internal policies and procedures,

(b)    violating regulations and other prudent and sound practices and procedures within the accounting industry,

(c)    disregarding standard practices and procedures, and

(d)    ignoring the "red flags" about WEBER's conduct as it related to the manner in which he handled Plaintiffs' tax and corporate matters

260.    CITRIN allowed WEBER, one of its Partners, to improperly use client assets to further benefit himself to The Clients' detriment.  Specifically, CITRIN permitted WEBER to use CITRIN software and employees other than WEBER under the guise of providing The Clients proper tax and corporate representation when The Clients were actually being defrauded of their money and were being subjected to exorbitant tax liabilities.

261.    CITRIN was either aware of the "red flag" warnings that arose as a result of WEBER's improper actions and ignored those warnings or failed to have in place the proper monitoring mechanisms that a properly operating accounting firm should have in place to prevent such harm to clients.

**SILVER LAW GROUP**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

262.    As a result of the foregoing failures to detect and/or halt WEBER's harmful acts and omissions, CITRIN is liable for all damages directly and proximately caused to The Clients through WEBER's acts and omissions.

263.    Additionally, JOHN DOE NO. 1 had actual and/or constructive knowledge and rendered substantial assistance in regard to WEBER's breach of his fiduciary duties to The Clients by:

(a)    ignoring CITRIN's own internal policies and procedures,

(b)    violating regulations and other prudent and sound practices and procedures within the accounting industry,

(c)    disregarding standard practices and procedures, and

(d)    preparing tax filings known to be false.

264.    As a result of the foregoing failures and complicit assistance in WEBER's harmful acts and omissions, JOHN DOE NO. 1 is liable for all damages directly and proximately caused to The Clients through WEBER's acts and omissions.

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership, and JOHN DOE NO. 1 , an individual, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.  Plaintiffs reserve the right to seek leave of court to assess punitive damages against CITRIN and JOHN DOE NO. 1.

**Silver Law Group**
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

## COUNT XV – AIDING AND ABETTING CONVERSION
### [AGAINST CITRIN AND JOHN DOE NO. 1]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

265.  WEBER asserted dominion and control over The Clients' property by misappropriating for his personal use and benefit the funds wired to him by The Clients.

266.  CITRIN had actual and/or constructive knowledge of WEBER's acts in misappropriating The Clients' funds by virtue of the transactions which occurred during the accountant-client relationship among The Clients, CITRIN and WEBER.

267.  CITRIN rendered substantial assistance to WEBER in converting The Clients' funds by ignoring its own internal policies and procedures, by violating regulations within the accounting industry, and by violating other prudent and sound practices and procedures within the accounting industry, as more fully identified above.

268.  As a result of the foregoing, CITRIN is liable for all damages directly and proximately caused to The Clients through WEBER's acts and omissions.

269.  Additionally, JOHN DOE NO. 1 had actual and/or constructive knowledge and rendered substantial assistance in regard to WEBER's conversion of The Clients' funds by:

      (a)      ignoring CITRIN's own internal policies and procedures,

      (b)      violating regulations and other prudent and sound practices and procedures within the accounting industry,

      (c)      disregarding standard practices and procedures, and

      (d)      preparing tax filings known to be false.

270.  As a result of the foregoing failures and complicit assistance in WEBER's harmful acts and omissions, JOHN DOE NO. 1 is liable for all damages directly and proximately caused to The Clients through WEBER's acts and omissions.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

WHEREFORE, Plaintiffs demand entry of a judgment against Defendant, CITRIN COOPERMAN & COMPANY, LLP, a New York limited liability partnership, and JOHN DOE NO. 1, an individual, for an amount within the jurisdictional limits of this court, including an award of interest, costs, and such other relief as this Court deems just and appropriate.  Plaintiffs reserve the right to seek leave of court to assess punitive damages against CITRIN and JOHN DOE NO. 1.

### COUNT XVI – IMPOSITION OF A CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS
#### [AGAINST LORRAINE WEBER]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 154 above, and further allege:

271.    Lorraine Weber is a beneficiary of the proceeds that were wrongly misappropriated, converted, and stolen by her husband, Matthew G. Weber.

272.    For example, on or about each of the following dates, Lorraine Weber accepted from her husband, WEBER, the following funds which were transferred out of the Sterling National Bank CITRIN-identified account noted above:

| DATE | AMOUNT |
|---|---|
| May 21, 2005 | $4,810.00 |
| December 2, 2005 | $25,000.00 |
| March 15, 2006 | $4,000.00 |
| May 4, 2006 | $1,500.00 |

273.    The payments noted in the preceding paragraph are but a small representative sample of the illegally-obtained funds transferred from WEBER to Lorraine Weber.  Upon information and belief, additional transfers were made between 2006-2012 from WEBER to Lorraine Weber and to other Lorraine Weber family members for her benefit.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

274.     Any and all monies being held by, or for, Lorraine Weber must be held in trust for the benefit of The Clients, as Lorraine Weber is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds which were provided to her by her spouse, Matthew G. Weber.

275.     Any and all funds provided to, or for the benefit of, Lorraine Weber must be disgorged to the benefit of The Clients, as Lorraine Weber is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds which were provided to her by her spouse, Matthew G. Weber.

WHEREFORE, Plaintiffs demand imposition of a constructive trust against Defendant, LORRAINE WEBER, an individual; full disgorgement of all funds that were wrongly misappropriated, converted, and stolen by her husband, Matthew G. Weber; and an award of interest, costs, and such other relief as this Court deems just and appropriate.

## RESERVATION OF RIGHTS

Plaintiffs reserve their right to further amend this Amended Complaint, upon completion of their investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

## PLAINTIFFS' DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

SILVER LAW GROUP
11780 West Sample Road ● Coral Springs, Florida 33065 ● Telephone (954) 755-4799 ● Facsimile (954) 755-4684
www.silverlaw.com

Case No.: 12-cv-6909 (LTS) (SN)
ECF Case

Respectfully submitted,

**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:    (954) 755-4799
Facsimile:    (954) 755-4684

By:   _/s/  Scott L. Silver_
        SCOTT L. SILVER
        Attorney Bar Code No. SDNY S6032
        New York Bar No. 2829968
        E-mail:  SSilver@silverlaw.com
        DAVID C. SILVER
        Admitted *Pro Hac Vice* [DE 15]
        E-mail: DSilver@silverlaw.com
        JASON S. MILLER
        Admitted *Pro Hac Vice* [DE 16]
        E-mail: JMiller@silverlaw.com

## <u>CERTIFICATE OF SERVICE</u>

**WE HEREBY CERTIFY** that a copy of the foregoing was sent to the Clerk of Court for filing on this ___5th___ day of November 2012 and that a copy will be sent <u>via</u> <u>transmission of Notices of Electronic Filing generated by CM/ECF</u> to: **JOHN K. CROSSMAN, ESQ.; FRANK C. WELZER, ESQ., and SCOTT J. WATNIK, ESQ.**, ZUKERMAN GORE BRANDEIS & CROSSMAN, LLP, *Counsel for Defendant, Citrin Cooperman & Company, LLP*; Eleven Times Square, New York, NY 10036; **KEVIN T. KEARON, ESQ.**, BARKET, MARION, EPSTEIN & KEARON, LLP, *Counsel for Defendant, Matthew G. Weber*, 666 Old Country Road - Suite 700, Garden City, NY 11530; and <u>via</u> <u>First</u> <u>Class</u> <u>U.S.</u> <u>Mail</u> to **LORRAINE WEBER**, 82 E. Lexington Avenue, Oceanside, NY 11572.

        _/s/ Scott L. Silver_
        SCOTT L. SILVER