UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/13
```

-------------------------------------------------- X

ANDREW TARGUM, ERIKA TARGUM,
ANDREW S. TARGUM, P.C., ANDREW
SCOTT TARGUM, P.C., TARGUM
BRITTON & TOLUD, LLP, and IRWIN
SEEMAN,

                    Plaintiffs,

           - against -

CITRIN COOPERMAN & COMPANY,
LLP, MATTHEW G. WEBER,
LORRAINE WEBER, VINCENT
CAMILERI, as representative of the estate
of SALVATORE CAMILERI, SHEILA
WEBER, and JOHN DOE NO. 1,

                    Defendants.

-------------------------------------------------- X

**OPINION AND ORDER**

12 Civ. 6909 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Andrew Targum, Erika Targum, Andrew S. Targum, P.C., Andrew

Scott Targum, P.C., Targum, Britton & Tolud, LLP ("TBT" and collectively,

"Targum Plaintiffs"), and Irwin Seeman ("Seeman" with Targum Plaintiffs,

"Plaintiffs"), bring this action against Citrin Cooperman & Company, LLP

("Citrin"), Matthew G. Weber ("Weber"), Lorraine Weber, Vincent Camileri — as

1

representative of the estate of Salvatore Camileri ("Camileri"), Sheila Weber, and

John Doe No. 1 (collectively, "Defendants").[1] Plaintiffs seek damages against

Citrin and the other Defendants for: (1) violations of the Racketeer Influenced and

Corrupt Organization Act ("RICO")[2]; (2) violations of the Computer Fraud and

Abuse Act ("CFAA")[3]; (3) common law fraud; (4) civil conspiracy; (5)

conversion; (6) breach of fiduciary duties; (7) negligence; (8) professional

negligence; and (9) negligent retention and supervision.[4]

      Citrin now moves to dismiss all claims, with prejudice, pursuant to

Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim.[5]

---

[1]    *See* Second Amended Complaint for Damages ("SAC").

[2]    *See* 18 U.S.C. § 1962(c), (d).

[3]    *See id.* § 1030.

[4]    Plaintiffs' final claim — fraudulent conveyance of funds — is not alleged against Citrin.

[5]    In the same motion, Citrin moves to dismiss under Rule (12)(b)(1) for lack of subject matter jurisdiction. However, Plaintiffs' RICO and CFAA claims are not "so insubstantial, implausible, or otherwise completely devoid of merit as not to involve a federal controversy." *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993). Therefore, the RICO and CFAA claims present federal questions under 28 U.S.C. § 1331, and thus confer subject matter jurisdiction on this Court. *See Air China, Ltd. v. Kopf*, 473 Fed. App'x 45, 47-48 (2d Cir. 2012). The Court also has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367 because they arise from the same set of operative facts, namely the overall scheme to defraud Plaintiffs by mishandling their tax filings. *See, e.g., Rothberg v. Chloe Foods Corp.*, No. 06 Civ. 5712, 2007 WL 2128376, at *8 (E.D.N.Y. July 25, 2007). Therefore, the Court will

In a separate submission, Citrin moves for Rule 11 sanctions against Plaintiffs and their counsel based on pleading deficiencies in the SAC. For the reasons that follow, Citrin's motion to dismiss is granted and its motion for sanctions is denied.

## II.    BACKGROUND

### A.    Facts[6]

Andrew Targum and his wife, Erika, live in New York City.[7] Andrew is the principal of [1] Andrew S. Targum, P.C., [2] Andrew Scott Targum, P.C., and [3] TBT.[8] Irwin Seeman, who lives in Wheatley Heights, New York, is a former employee of Andrew S. Targum, P.C.[9]

Citrin — a limited liability partnership — is one of New York City's

---

review Plaintiffs' claims under Rule 12(b)(6).

[6]    The facts are drawn from the SAC. As discussed below, many of the allegations in the SAC are not presumed true because they are conclusory statements, threadbare recitals of causes of action, or are contradicted by more specific allegations or documentary evidence. *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Kirkendall v. Halliburton*, 707 F.3d 173, 175 n.1 (2d Cir. 2013). The well-pleaded factual allegations, however, are presumed true for the purposes of this motion. *See Iqbal*, 556 U.S. at 679.

[7]    *See* SAC ¶¶ 8-9.

[8]    *See id.* ¶ 8.

[9]    *See id.* ¶ 14.

largest accounting firms.[10]  Matthew Weber was a practicing certified public

account ("CPA") and partner at Citrin.[11]  Weber's wife, Lorraine Weber, lives in

Oceanside, New York.[12]  Weber's father-in-law, Camileri— now deceased — was

a CPA at an accounting firm, Stokes & Hoyt Company.[13]  Weber's mother, Sheila

Weber, lives in Long Beach, New York.[14]  John Doe No. 1 is an individual over the

age of eighteen who prepared tax documents for the Targum Plaintiffs.[15]

     In 2003, Weber began preparing and filing Plaintiffs' income taxes.[16]

In early 2005, several months after Weber joined Citrin as a partner, Weber was

sued for accounting malpractice and retained TBT to represent him.[17]  Rather than

pay attorneys' fees to TBT, Weber provided Plaintiffs with his professional

accounting services free of charge.[18]  Plaintiffs paid no fees for Weber's services

---

[10]    *See id.* ¶¶ 15, 28.

[11]    *See id.* ¶ 16.

[12]    *See id.* ¶ 17.

[13]    *See id.* ¶ 18.

[14]    *See id.* ¶ 19.

[15]    *See id.* ¶¶ 21, 45.

[16]    *See id.* ¶ 34.

[17]    *See id.* ¶ 35.

[18]    *See id.* ¶ 38.

even though Seeman occasionally received invoices.[19]

"Citrin and Weber" advised Plaintiffs regarding various tax filings and received access to the Targum Plaintiffs' computers — including Quickbooks applications and spreadsheets containing relevant tax information.[20]  On April 5, 2005, Weber sent the Targum Plaintiffs an email instructing them to wire funds to pay New York City and State taxes to a "Citrin-identified bank account."[21]  Plaintiffs sent at least eighty bank transfers to such bank accounts.[22]

---

[19]     *See id.* ¶¶ 39-40, 145-146.

[20]     *Id.* ¶¶ 45, 73.  The SAC repeatedly attributes acts to "Citrin and Weber" or "Citrin and/or Weber" where related exhibits show that Weber alone contacted tax authorities, worked on Plaintiffs' tax documents, and communicated with Targum Plaintiffs.  *See* SAC Exhibits ("SAC Exs.") A, B, C, D, F, G, H, I, J, K, M, N, R.  As discussed below, such "group pleading" is impermissible under either the notice pleading requirements of Rule 8 or the heightened pleading standard of Rule 9(b).  *See Clayton's Auto Glass, Inc. v. First Data Corp.*, No. 12 Civ. 5018, 2013 WL 5460872, at *5 (E.D.N.Y. Sept. 30, 2013); *Holmes v. Allstate Corp.*, No. 11 Civ. 1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012), *adopted by* 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012).

[21]     SAC ¶ 53.  The SAC confusingly employs the term "Citrin-identified bank accounts" to which Plaintiffs wired their money.  *See id.* ¶¶ 50, 52, 53.  However, allegations in the SAC show that the accounts were Weber's.  The account addresses were labeled, "Matthew Weber c/o Citrin Cooperman & Company."  *See id.* ¶ 56.  But a "care of" or "c/o" designation in an address does not indicate that the "care of" entity has an interest in the property.  *See Nanyuan Shipping Co., Ltd. v. Marimed Agencies UK*, 595 F. Supp. 2d 314, 317 (S.D.N.Y. 2009); *Jackson v. United States*, 526 F.3d 394, 397 (8th Cir. 2008).  Instead, the designation shows only that Weber had an interest in Plaintiffs' funds.

[22]     *See* SAC ¶¶ 59-61.

Next, Weber prepared two sets of tax filings: one provided to Plaintiffs, and another — with Citrin's Employee Identification Number ("EIN") — to relevant tax authorities.[23] The latter grossly under-reported Plaintiffs' taxable income and contained misrepresentations.[24] Weber also failed to file required tax returns for Plaintiffs, while representing that he had.[25] Weber relied upon fellow partners and employees at Citrin "including Vera Fici, Elda Solla, Thomas Grohs, Michael J. Lester, CPA and/or John Doe No.1, his father-in-law Camileri, and others" (the "Tax Fraud Enterprise") to carry out the "Tax Fraud Scheme."[26] Plaintiffs were unaware that "Weber and Citrin" were under-reporting their taxes, failing to file tax returns, creating fraudulent documents, and siphoning off Plaintiffs' funds.[27]

The SAC alleges that "Citrin's management team" knew that Weber — with the assistance of other Citrin partners and employees — was using Citrin's

---

[23]   See id. ¶ 69.

[24]   See id.

[25]   See id.

[26]   Id. ¶ 64.  Fici and Solla were administrative assistants at Citrin. See id. ¶ 22.  Grohs was a Valuation and Forensic Services employee at the firm. See id.  While Lester was a Citrin partner, the SAC fails to allege that he worked on Targum matters or was aware of Weber's fraud. See id.

[27]   Id. ¶ 51.

6

EIN, computers, and software to prepare Plaintiffs' tax returns.[28]  Further, to the extent Citrin's management team was "truly oblivious" to the actions of the Tax Fraud Enterprise, Citrin ratified those actions by allowing the Tax Fraud Enterprise to use Citrin's resources.[29]

In February 2012, Jordan Bardach and Image Marketing Group, LLC ("Bardach victims") — non-parties in the present case — sued Weber and Citrin for tax fraud (the "Bardach suit").[30]  Like Plaintiffs, Bardach and Image Marketing Group, LLC were victims of "Citrin and Weber's" fraudulent tax filing scheme.[31] When Citrin was served with process in the Bardach suit, it was put on notice that "Weber and fellow Partners" at Citrin had engaged in fraud.[32]

On February 28, 2012, Citrin sent  Plaintiffs a mass-mailed letter addressed "Dear Sir or Madam," stating, "It has come to our attention that [] Weber . . . has been independently providing you with services concerning your taxes, tax payments, or possibly other matters, in violation of our partnership agreement, and without you having even been a client of this firm and without the

---

[28]    *Id.* ¶ 158.

[29]    *Id.* ¶ 159.

[30]    *See id.* ¶¶ 131-132.

[31]    *Id.* ¶ 132.

[32]    *Id.* ¶ 133.

knowledge or authorization of our firm."[33]  On March 9, 2012, David Kells,

Citrin's Chief Operating Officer, sent Seeman a letter demanding payment of "an

outstanding balance due to [Citrin] of $2,500 for services rendered at your

request."[34]  Plaintiffs now owe over $2,000,000 to various tax authorities.[35]

     In February 2012, Weber was indicted on three counts of grand

larceny and one count of repeatedly failing to file personal income and earnings

taxes.[36]  Weber pled guilty to all counts and is currently incarcerated.[37]

**B.     Procedural History**

     On September 11, 2012, Plaintiffs filed their original complaint

against Citrin, Weber, Lorraine Weber, John Cooperman — Citrin's managing

partner, and Elda Solla — Weber's administrative assistant at Citrin, asserting

violations of RICO, the CFAA, and state law.[38]  On October 11, 2012, Solla served

Plaintiffs with a Rule 11 sanctions motion ("First Sanctions Motion") based on

---

[33]    *Id.* ¶¶ 141, 145 (citing SAC Exs. S, T).

[34]    *Id.* ¶ 145 (citing SAC Ex. U).

[35]    *See id.* ¶ 5.

[36]    *See id.* ¶ 148.

[37]    *See id.* ¶¶ 16, 150.

[38]    *See* Memorandum of Law in Support of Citrin's Motion for Rule 11
Sanctions ("Sanctions Motion #3") ("Third Sanctions Mem.") at 1.

pleading deficiencies in the complaint.[39]  Pursuant to Rule 11, the motion was not

filed at that time.[40]  In October 2012, in response to Plaintiffs' request, Citrin

produced approximately 5,200 pages of documents that Weber had covertly stored

in his office, as well as emails that Weber had exchanged with Plaintiffs.[41]

On November 2, 2012, Plaintiffs withdrew the original Complaint,

and filed the First Amended Complaint ("FAC").[42]  The FAC contained the same

allegations against Citrin but abandoned all claims against Solla and Cooperman.[43]

On December 16, 2012, Citrin served but did not file a Rule 11 sanctions motion

("Second Sanctions Motion"), predicated on the same RICO pleading deficiencies

as the First Sanctions Motion.[44]  Plaintiffs did not withdraw the FAC.   On January

16, 2013, Citrin filed the Second Sanctions Motion with the Court.[45]

On May 20, 2013, Judge Laura Taylor Swain issued an Order which

permitted Plaintiffs to withdraw the FAC and amend their complaint for a *final*

---

[39]   *See id.*

[40]   *See id.*

[41]   *See id.*

[42]   *See id.*

[43]   *See id.*

[44]   *See id.* at 2; 12/21/12 Certificate of Service, Doc. No. 42.

[45]   *See* Third Sanctions Mem. at 2.

time.[46]  The Order also terminated the Second Sanctions Motion, without prejudice to renew against the SAC.[47]

On July 1, 2013, Plaintiffs filed the SAC, which alleges the same RICO and CFAA claims against Citrin, but abandons several of the originally asserted state law claims.[48]  On July 22, 2013, Citrin sent a letter to Plaintiffs, describing the deficiencies in the SAC and Citrin's intent to move to dismiss.[49]  On July 24, 2013, Citrin and Plaintiffs participated in a telephone conference, but Plaintiffs declined to amend, withdraw, or abandon the SAC.[50]  On August, 22, 2013, Citrin filed the instant Rule 11 sanctions motion ("Third Sanctions Motion"), without first serving a notice on Plaintiffs.[51]

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), the court

---

[46]   *See* 5/20/13 Order at 2 (emphasis added).

[47]   *See id.*

[48]   *See* SAC ¶¶ 164-265.

[49]   *See* Third Sanctions Mem. at 2-3 (citing Affidavit of Scott J. Watnik in Support of Citrin's Motion for Rule 11 Sanctions ("Watnik Aff.") ¶ 7).

[50]   *See id.* at 3 (citing Watnik Aff. ¶ 8).

[51]   *See id.*

10

"accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."[52] The court evaluates the complaint under the "two-pronged approach" set forth in *Iqbal*.[53] *First*, a court may "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[54] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[55] *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[56] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[57] Plausibility "is not akin to a probability requirement," rather, plausibility requires

---

[52]     *Freidus v. Barclays Bank PLC*, — F.3d —, 2013 WL 4405291, at *3 (2d Cir. Aug. 19, 2013) (citing *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591–92 (2d Cir. 2007)).

[53]     *See Iqbal*, 556 U.S. at 679.

[54]     *Bigio*, 675 F.3d at 173 (citing *Iqbal*, 556 U.S. at 678).

[55]     *Id.*

[56]     *Taveras v. UBS AG*, 513 Fed. App'x 19, 22 (2d Cir. 2013) (citing *Iqbal*, 556 U.S. at 679).

[57]     *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

11

"more than a sheer possibility that a defendant has acted unlawfully."[58]

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider "only the complaint, . . . any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily."[59] Allegations in the complaint that are "contradicted by more specific allegations or documentary evidence" are not entitled to a presumption of truthfulness.[60]

## B.   Pleading Requirements

### 1.   Rule 8

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[61] To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet the plausibility standard, as discussed above.[62]

---

[58]   *Id.*

[59]   *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (citing *In re Citibank ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011) (internal quotation marks omitted)).

[60]   *Kirkendall*, 707 F.3d at 175 n.1 (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

[61]   *Iqbal*, 556 U.S. at 677-78 (2009) (citing Fed. R. Civ. P. 8(a)(2)).

[62]   *See id.* at 678 (citing *Twombly*, 550 U.S. at 570).

### 2.    Rule 9(b)

"All claims sounding in fraud—including those under RICO—must comply with Rule 9(b)'s heightened pleading standard."[63]  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud . . . ."[64]  "This pleading constraint serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits."[65]  Plaintiffs alleging fraud "may not rely on sweeping references to acts by all or some of the defendants because each named defendant is entitled to be apprised of the facts surrounding the alleged fraud."[66]  Thus, a plaintiff must allege that "each [d]efendant had a specific intent to defraud either by devising, participating in, or aiding and abetting the scheme."[67]

To comply with the requirements of Rule 9(b), a plaintiff must: "(1)

---

[63]     *Boritzer v. Calloway*, No. 10 Civ. 6264, 2013 WL 311013, at *4 (S.D.N.Y. Jan. 14, 2013). *Accord Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184–185 (2d Cir. 2008)).

[64]     Fed. R. Civ. P. 9(b).

[65]     *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

[66]     *Holmes*, 2012 WL 627238, at *23 (citing *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. De–Con Mechanical Contractors, Inc.*, 896 F. Supp. 342, 347 (S.D.N.Y. 1995)).

[67]     *Id.*

13

specify the statements that the plaintiff contends were fraudulent, (2) identify the

speaker, (3) state where and when the statements were made, and (4) explain why

the statements were fraudulent."[68]  "Allegations that are conclusory or unsupported

by factual assertions are insufficient."[69]

### C.   Rule 11 Sanctions

A pleading, motion or other paper violates Rule 11 either when it is

submitted for "any improper purpose, or where, after reasonable inquiry, a

competent attorney could not form a reasonable belief that the pleading is well

grounded in fact and is warranted by existing law or a good faith argument for the

extension, modification, or reversal of existing law."[70]

The Supreme Court has cautioned that Rule 11 "must be read in light

of concerns that it will . . . chill vigorous advocacy."[71]  Thus, "[w]hen divining the

point at which an argument turns from merely losing to losing and sanctionable"

---

[68]     *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d
192, 197 (2d Cir. 2013) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175
(2d Cir. 1993)).

[69]     *ATSI*, 493 F.3d at 99.

[70]     *Watkins v. Smith*, No. 12 Civ. 4635, 2013 WL 655085, at *5
(S.D.N.Y. Feb. 22, 2013) (citing *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir.
2002)).

[71]     *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

courts must "resolve all doubts in favor of the signer of the pleading."[72]  Sanctions

should be imposed only "where it is patently clear that a claim has absolutely no

chance of success."[73]

In deciding a Rule 11 motion, a district court "must adhere to the

procedural rules which safeguard due process rights."[74]  Rule 11 requires that a

motion for sanctions "be made separately from any other motion and . . . describe

the specific conduct that allegedly violates Rule 11(b)."[75]  In addition, once the

motion is served on the opposing party, "[the motion] must not be filed or be

presented to the court if the challenged paper, claim, defense, contention, or denial

is withdrawn or appropriately corrected within 21 days after service or within

another time the court sets."[76]  This "safe harbor provision" gives parties

threatened with sanctions "the opportunity to withdraw the potentially offending

---

[72]     *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

[73]     *Smith v. Westchester Cnty. Dept. of Corrs.*, No. 07 Civ. 1803, 2013 WL 5192751, at *4 (S.D.N.Y. Sept. 16, 2013).

[74]     *Castro v. Mitchell*, 727 F. Supp. 2d 302, 305 (S.D.N.Y. 2010) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 58 (2d Cir. 2000)). *Accord Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51-52 (2d Cir. 2008).

[75]     Fed. R. Civ. P. 11(c)(2).

[76]     *Id.*

statements before the sanctions motion is officially filed."[77] "A motion that fails to comply with the safe harbor provision of Rule 11 must be denied."[78]

## IV.   APPLICABLE LAW

### A.   RICO

In considering civil RICO claims, a court must be mindful of the devastating effect such claims may have on defendants.[79] "It is well settled that 'the aim of RICO is to protect organizations from criminal infiltration, not to make them responsible parties.'"[80] Because an agreement to commit predicate acts is at the heart of a civil RICO claim, "a RICO civil conspiracy complaint, at the very

---

[77]   *Castro*, 727 F. Supp. 2d at 306 (citing *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003)).

[78]   *Id.* (citing *Fierro v. Gallucci*, 423 Fed. App'x 17, 19 (2d Cir. 2013). *Accord Williamson*, 542 F.3d at 51; *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002) (reversing imposition of Rule 11 sanctions because "appellees did not serve their [Rule 11] motion on Perpetual prior to filing it with the court").

[79]   *See Continental Petroleum Corp., Inc. v. Corporate Funding Partners, Inc., LLC*, No. 11 Civ. 7801, 2012 WL 1231775, at *4 (S.D.N.Y. Apr. 12, 2012); *Kirk v. Heppt*, 423 F. Supp. 2d 147, 150 (S.D.N.Y. 2006) ("Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.") (citations and quotation marks omitted).

[80]   *USA Certified Merchants v. Koebel*, 262 F. Supp. 319, 327 (S.D.N.Y. 2003) (quoting *Volmar Distributors, Inc v. New York Post Co., Inc.*, 899 F. Supp. 1187, 1192 (S.D.N.Y. 1995)). *Accord Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001).

16

least, must allege specifically such an agreement."[81]  To state a RICO claim

pursuant to section 1962(c), a plaintiff must allege "(1) conduct, (2) of an

enterprise, (3) through a pattern of racketeering activity."[82]  The following section

— section 1962(d) — makes it unlawful for "any person to conspire to violate" the

earlier provisions of section 1962.  If a plaintiff fails to state a claim under section

1962(c), a claim under section 1962(d) must fail as well.[83]

A plaintiff's burden is high when pleading RICO allegations.[84]  *First*,

where the conduct or predicate acts sound in fraud, they must be pled with

particularity under Rule 9(b).[85]  *Second*, a pattern of racketeering "must be

adequately alleged in the complaint."[86]  "When bringing a RICO claim against

---

[81]     *Thayil v. Fox Corp.*, No. 11 Civ. 4791, 2012 WL 364034, at *4
(S.D.N.Y. Feb. 2, 2012) (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d
21, 25 (2d Cir. 1990)).

[82]     *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119
(2d Cir. 2013) (citing *Anatian v. Coutts Bank (Switz) Ltd.*, 193 F.3d 85, 88 (2d Cir.
1999)).

[83]     *See Watkins*, 2012 WL 5868395, at *3 (citing *First Capital Asset
Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004)).

[84]     *See Spiteri v. Russo*, No. 12 Civ. 2780, 2013 WL 4806960, at *45
(E.D.N.Y. Sept. 7, 2013).

[85]     *See Curtis v. Law Offices of David M. Bushman, Esq.*, 443 Fed. App'x
582, 584 (2d Cir. 2011).

[86]     *Spiteri*, 2013 WL 4806960, at *45 (citing *Spool*, 520 F.3d at 183).

17

multiple defendants, the plaintiff must allege that each defendant committed two or more predicate acts."[87]  Plaintiff must also show that "the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity."[88]

"The terms enterprise, racketeering activity, and pattern as used in the RICO statute are terms of art."[89]  An "enterprise" is a legal entity or an association-in-fact.[90]  "Racketeering activity" includes any act indictable under the state and federal criminal statutes listed in 18 U.S.C. § 1961(1), including the mail fraud and wire fraud statutes.[91]  A "pattern" of racketeering activity involves at least two predicate acts that meet the definition of racketeering activity.[92]

## B.    Computer Fraud and Abuse Act

"The CFAA, in relevant part, provides a private federal cause of action against a person who 'intentionally accesses a computer without

---

[87]    *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 101 (W.D.N.Y. 2009) (citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)).

[88]    *Id.* (citing *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, No. 04 Civ. 29342005, 2005 WL 3710370, at *9 (E.D.N.Y. Feb. 22, 2005) (internal citations omitted)).

[89]    *Atkins v. Apollo Real Estate Advisors, L.P.*, No. 05 Civ. 4365, 2008 WL 1926684, at *11 (E.D.N.Y. Apr. 30, 2008).

[90]    *See* 18 U.S.C. § 1961(4).

[91]    *See id.* § 1961(1).

[92]    *See id.* § 1961(5).

authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer.'"[93]  Although the statute does not define "access without authorization," it provides that the phrase "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter."[94]  "While the Second Circuit has yet to squarely address the meaning of 'without authorization' or 'exceeds authorized access' as used in the CFAA, the Ninth Circuit and district courts in the Second Circuit have recently held that an employee with authority to access his employer's computer system does not violate the CFAA by using his access privileges to misappropriate information."[95]

## V.  DISCUSSION

The SAC is replete with problems.  For one, the SAC— 69 pages long

---

[93]     *Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*, No. 08 Civ. 3980, 2009 WL 2524864, at *5 (E.D.N.Y. Aug. 14, 2009) (quoting 18 U.S.C. § 1030(a)(2)).

[94]     *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 523 (S.D.N.Y. 2013) (citing 18 U.S.C. § 1030(e)(6)).

[95]     *United States v. Aleynikov*, 737 F. Supp. 2d 173, 192 (S.D.N.Y. 2010) (citing *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130-31 (9th Cir. 2009); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010)).

with 104 pages of exhibits — is indisputably prolix.[96]  Prolix complaints have been

dismissed in this Circuit although "'[d]ismissal . . . is usually reserved for those

cases in which the complaint is so confused, ambiguous, vague, or otherwise

unintelligible that its true substance, if any, is well disguised.'"[97]  While not

unintelligible, the SAC confusingly treats Weber and Citrin as a unit — referring at

various times to "Citrin and Weber," "Citrin and/or Weber," and "Citrin/Weber."[98]

This sort of "group pleading" fails to put Citrin on notice of the specific allegations

against it.[99]  Further, Plaintiffs make many allegations against Citrin upon

"information and belief" without stating the basis of that belief.[100]  "Group

pleading" and allegations based on "information or belief" are especially

inadequate under Rule 9(b)'s heightened pleading standard.[101]

---

[96]    *See* Fed. R. Civ. P. 8(a)(2) (A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief.").

[97]    *Fisch v. Consulate Gen. of Repub. of Poland*, No. 11 Civ. 4182, 2011 WL 3847398, at *2 (S.D.N.Y. Aug. 30, 2011) (quoting *Salahuddin v Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted)).

[98]    *See, e.g.*, SAC ¶¶ 1, 6, 39, 45, 51, 73, 75, 164, 166, 206, 213.

[99]    *See Holmes*, 2012 WL 627238, at *22 ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it.").

[100]   *See, e.g.*, SAC ¶¶ 54, 72, 83, 160, 202, 254, 255.

[101]   *See Amiron Dev. Corp. v. Sytner*, No. 12 Civ. 3036, 2013 WL 1332725, at *5 (E.D.N.Y. Mar. 29, 2013); *S.E.C. v. U.S. Envtl., Inc.*, 82 F. Supp.

### A.   Citrin's Motion to Dismiss

### 1.   RICO Claims

To satisfy RICO's "conduct" requirement, Plaintiffs allege that Citrin committed three predicate acts: (1) mail fraud, (2) wire fraud, and (3) engaging in monetary transactions in property derived from specified unlawful activity.[102]  All three allegations are deficient.

*First*, "[t]he elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires."[103]  To adequately allege scienter for mail fraud under Rule 9(b), one must "'allege facts that give rise to a strong inference of fraudulent intent.'"[104]  Innocent mailings that contain no false information may supply the mailing element only

---

2d 237, 241 (S.D.N.Y. 2000) (stating that a plaintiff cannot satisfy Rule 9(b) "by making vague allegations about the defendants as a unit"); *Lichtenstein v. Reassure Am. Life Ins. Co.*, No. 07 Civ. 1653, 2009 WL 792080, at *7 (E.D.N.Y. Mar. 23, 2009) ("Allegations of fraud based on information and belief generally do not satisfy Rule 9(b), except for matters that are 'peculiarly within the opposing party's knowledge,' in which case Rule 9(b) permits information and belief allegations so long as they are 'accompanied by a statement of facts upon which the belief is founded.'") (quoting *Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986)).

[102]    *See* SAC ¶¶ 206-215.

[103]    *United States. v. Iorio*, 465 Fed. App'x 60, 61 (2d Cir. 2012) (citing *States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000)).

[104]    *Curtis*, 443 Fed. App'x at 584 (quoting *First Capital Asset Mgmt., Inc.*, 385 F.3d at 178–79 (internal quotation marks omitted)).

where they are "incident to an essential part of the scheme [to commit fraud]."[105]

The SAC identifies only four mailings by Citrin: (1) the mass-mailed letter sent to Andrew S. Targum, P.C, *informing* it of Weber's fraudulent activity (the "2/28/12 Letter"), (2) the same letter sent to Seeman, (3) another letter to Seeman regarding an unpaid balance (the "3/9/12 Letter"), and (4) several invoices and collection notices sent to Seeman.[106]  The SAC does not allege that any of these mailings contains a fraudulent statement.  Nor can they conceivably give rise to a strong inference of fraudulent intent.  Most importantly, Plaintiffs fail to allege how these mailings are in any way connected to the Tax Fraud Scheme.

Leaving Citrin's mailings aside, Plaintiffs argue that Citrin is liable for fraudulent mailings made by Weber.  They contend that Citrin could have "reasonably foreseen" that Weber would "use the mails or interstate wires in the ordinary course of business as a result of [Citrin's] acts."[107]  But Plaintiffs fail to explain how Citrin's unidentified "acts" could have caused Weber to use the mails or how Weber's fraudulent scheme was foreseeable.

---

[105]    *United States v. Reifler*, 446 F.3d 65, 95 (2d Cir. 2006) (citing *Schmuck v. United States*, 489 U.S. 705, 710–11 (1989)).

[106]    *See* SAC Exs. S, T, U, V.

[107]    Plaintiffs' Memorandum of Law in Opposition to Citrin's Motion to Dismiss the SAC ("Pl. Mem.") at 14 (citing *Zito v. Leasecomm Corp.*, No. 02 Civ. 8074,  2004 WL 2211650, at *12 (S.D.N.Y. Sept. 30, 2004).

*Second*, as to wire fraud, the SAC alleges (1) that Citrin wired a falsified Power of Attorney to the New York State Department of Taxation and Finance and (2) that Plaintiffs, Weber, and Citrin emailed tax documents to one another.[108]  However, it is well-established that "[p]urely intrastate communication [is] beyond the statute['s] reach"  and cannot serve as a predicate offense for a RICO violation.[109]  "Where all parties to the phone call are residents of or maintain offices in the same state, and the complaint is otherwise silent, the only reasonable inference to be drawn is that the [email or wire] is intrastate."[110]  Here, all parties are located in New York and the SAC does not allege the communications were interstate.[111]  Thus, the wire fraud claim is defective.

*Third*, Plaintiffs attempt to allege that Citrin engaged in monetary transactions in property derived from unlawful activity.  However, aside from Plaintiffs' wire transfers to Weber, the only other alleged monetary transactions are

---

[108]     *See* SAC ¶ 211.

[109]     *Azkour v. Haouzi*, No. 11 Civ. 5780, 2012 WL 3667439, at *4 (S.D.N.Y. Aug. 27, 2012) (citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 243 (2d Cir. 1999)).

[110]     *Id.* (citing *McCoy v. Goldberg*, 748 F. Supp. 146, 154 (S.D.N.Y. 1990)).

[111]     *See* SAC ¶¶ 8-23.

23

Weber's transfers of Plaintiffs' funds to his family members.[112]  There are no

alleged transfers by Citrin.  Although the SAC alleges that Weber transferred funds

from "Citrin-identified" bank accounts, Weber used the accounts as his own by

personally writing checks from them.[113]

   In the alternative, Plaintiffs argue that Citrin is vicariously liable for

Weber's conduct.[114]  In this Circuit, "courts . . . generally do not impose vicarious

liability under RICO unless the corporate . . . defendant is a central figure in the

RICO scheme."[115]  Thus, "[p]laintiffs seeking to impose vicarious liability must, at

a minimum, show that a corporate . . . officer had knowledge of or was recklessly

indifferent toward the unlawful activity."[116]  Even if shown, courts will "consider

other factors, such as the number of high-level employees involved in the

racketeering activity, their degree of participation in the racketeering activity,

whether these employees themselves committed the alleged predicate acts, and

---

[112] *See id.* ¶ 261 ("Members of Weber['s] family — including Camileri
and Sheila Weber — accepted from Weber . . . funds that they knew were illegally
obtained from [Plaintiffs] . . .").

[113] *See id.* ¶¶ 56, 138.

[114] *See* Pl. Mem. at 1, 6-8; SAC ¶¶ 23, 95, 154.

[115] *Fairfield Fin. Mortg. Grp. Inc. v. Luca*, 925 F. Supp. 2d 344, 350
(E.D.N.Y. 2013) (citing *Makowski v. United Bhd. & Joiners of Am.*, No. 08 Civ.
6150, 2010 WL 3026510, at *6 (S.D.N.Y. Aug. 2, 2010)).

[116] *Id.*

whether the corporation substantially benefitted from the racketeering activity."[117]

The SAC falls far short of pleading facts sufficient to hold Citrin vicariously liable.  The SAC asserts that "Citrin's management team" knew that Weber was using the firm's EIN, computers, and software to prepare tax filings as evidenced by the Activity Reports which record the use of Citrin's proprietary software.[118]  Yet, Plaintiffs fail to allege that partners or high-level executives review this back-office data.  Nor do they allege who in "Citrin's management team" learned of the fraud through reviewing the data or how they did so.  In fact, the SAC states that Joel Cooperman — the managing partner of the firm — learned of Weber's actions *after* the fraud was discovered.[119]  The February 28, 2012 mass mail letter indicates, at most, that Citrin had *learned of* Weber's fraud.[120]  Furthermore, the SAC alleges that Citrin is "apparently ignorant" of what its partners do and that the Citrin management team may have been "truly oblivious" to the tax fraud scheme.[121]

---

[117]   *Id.*

[118]   SAC ¶ 158.

[119]   *See id.* ¶ 149.

[120]   *See id.* ¶ 141 (citing SAC Exs. S, T).

[121]   *Id.* ¶¶ 33, 159.  Plaintiffs allege that Citrin "conceded" in its own complaint in a separate, state court case that it provided professional services to the Targum Plaintiffs. *Id.* ¶ 157.  But Plaintiffs have misread Citrin's complaint.

Moreover, the SAC fails to allege that any other high-level employees or partners committed any predicate acts.   Although the SAC alleges that Cooperman signed the 2/28/12 Letter and that David Kells — Citrin's Chief Operating Officer — signed the 3/9/12 Letter,[122] these mailings are not connected to the Tax Fraud Scheme, as explained above.  Michael Lester is the only Citrin Partner who allegedly helped Weber "carry out the Tax Fraud Scheme."[123]  Yet, the only allegation about Lester is that he "accessed the Citrin computer database and reviewed documents prepared for [Plaintiffs] on multiple occasions."[124]  The FAC — but not the SAC — included a screen shot of those records, showing that Lester accessed two of Plaintiffs' records for exactly zero seconds.[125]  In moving to dismiss the FAC, Citrin noted that Lester apparently spent no time looking at the records.[126]  The fact that Plaintiffs have now omitted this contradictory screen shot

---

Citrin's complaint never alleges a Citrin-Targum relationship, only that Weber and Targum conspired to misappropriate Weber's time at Citrin's expense.  *See* Third Sanctions Mem. at 12 (citing Watnik Aff. ¶ 9).

[122]    *See* SAC ¶ 135.

[123]    *Id.* ¶ 64.

[124]    *Id.* ¶ 104.

[125]    *See* Reply Memorandum of Citrin in Further Support of Motion to Dismiss the SAC at 2.

[126]    *See id.*

does not entitle their flawed allegation to a presumption of truth.[127]

Finally, the SAC fails to allege that Weber — who worked for free and accepted checks made out to himself — was acting in Citrin's interest in any way.[128]  Rather, the SAC states that Weber's actions hurt Citrin's professional reputation by exposing it as apparently ignorant of its Partners' actions.[129]

Thus, because Plaintiffs have failed to allege that Citrin committed any predicate act under RICO— let alone a "pattern of racketeering activity"— the Court need address whether Plaintiffs have alleged an enterprise.[130]  Because Plaintiffs failed to state a claim under 28 U.S.C. § 1962(c), their claim under 28 U.S.C. § 1962(d) must fail as well.[131]

### 2.    CFAA Claim

Plaintiffs allege that Citrin violated the CFAA, which provides a cause

---

[127]    *See Kirkendall*, 707 F.3d at 175 n.1.   Plaintiffs also allege that Lester "interceded with the IRS in connection with Bardach Victims' tax matters." SAC ¶ 65; *see also id.* ¶ 83.  However, allegations regarding Lester's past work for the Bardach victims — non-parties here— are irrelevant to Citrin's RICO liability.

[128]    *See* SAC ¶¶ 34-45.

[129]    *See id.* ¶ 33.

[130]    *See Edmonds v. Seavey*, No. 08 Civ. 5646, 2009 WL 2949757, at *6 n.9 (S.D.N.Y. Sept. 15, 2009) (declining to address the enterprise requirement because plaintiff failed to adduce evidence of any predicate act).

[131]    *See Peterson v. City of New York*, No. 11 Civ. 3141, 2012 WL 75029, at *4 (S.D.N.Y. Jan. 9, 2012); *First Capital Asset Mgmt., Inc.*, 385 F.3d at 182.

of action against a person who "intentionally accesses a computer *without*

*authorization or exceeds authorized access*, and thereby obtains . . . information

from any protected computer."[132]  The SAC states that Citrin had "access to

Targum's computers," and thus fails to allege "unauthorized access."[133]  Instead,

the SAC alleges that Citrin and Weber "exceeded their authorized access by

altering information on Targum's computers, software utilized by Targum, and

work-product created by Targum that Citrin and Weber were not entitled to

alter."[134]  The SAC also asserts that Citrin accessed Targum's computers to "use[]

and manipulate[] information in electronic format to alter filings with government

agencies" and that the "altered data has been permanently corrupted."[135]

   However, the SAC confuses "access" with "misuse."  Such misuse

does not state a claim under the CFAA, because a person does not "exceed[ ]

authorized access" or act "without authorization" when he misuses information to

which he otherwise has access.[136]  As a result, Plaintiffs' CFAA claim is dismissed.

---

[132]  18 U.S.C. § 1030(a)(2) (emphasis added).

[133]  SAC ¶¶ 73, 181.

[134]  *Id.* ¶ 180.

[135]  *Id.* ¶ 182.

[136]  *See Nexans Wire S.A. v. Sark-USA, Inc.*, 166 Fed. App'x 559, 563 (2d
Cir. 2006) (affirming the district court's reading of CFAA provision to exclude
losses incurred as a result of plaintiff's misappropriation of proprietary

### 3.    State Law Claims

Having now dismissed Plaintiffs' federal claims, I decline to exercise supplemental jurisdiction over the state law claims.  Under section 1367(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction over state claims after the dismissal of all claims over which it had original jurisdiction.[137]  However, the Second Circuit has held that "the scope of the district court's discretion is not boundless."[138]  The district court must consider factors, such as "judicial economy, convenience, and fairness to litigants."[139]  "[I]f these [factors] are not present, a federal court should hesitate to exercise jurisdiction over state claims."[140]  "In the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."[141]

Plaintiffs' remaining claims — which may have merit — are brought solely under state law.  In the interests of fairness and efficiency, they should be

_____

information). *See also JBC Holdings NY, LLC*, 931 F. Supp. 2d at 525.

[137]    *See* 28 U.S.C. § 1367(c)(3).

[138]    *Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

[139]    *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

[140]    *Id.*

[141]    *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998).

29

determined in state court.[142]

### B.   Citrin's Motion for Sanctions

Citrin has also moved for sanctions against Plaintiffs and their counsel under Rule 11.  Citrin charges that the allegations in the SAC lack evidentiary support, and that Plaintiffs' counsel ignored RICO pleading requirements.[143]  Citrin also argues that Plaintiffs filed the SAC for an improper purpose: to construct a treble damages suit against Citrin when Weber alone is liable for their loss.[144]

Plaintiffs have not argued that Citrin failed to comply in any respect with Rule 11's "safe harbor" provisions.  Nonetheless, it is appropriate to consider whether there was any deficiencies in this regard.[145]

On November 2, 2012, Plaintiffs withdrew the original Complaint, and filed the FAC.[146]  On December 16, 2012, Citrin served but did not file the

---

[142]   *See id.* at 357; *Gibbs*, 282 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (stating that it would "be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction").

[143]   *See* Third Sanctions Mem. at 6-16.

[144]   *See id.* at 16-19.

[145]   *See Watkins*, 2013 WL 655085, at *7.

[146]   *See* Third Sanctions Mem. at 1.

30

Second Sanctions Motion.[147]  Plaintiffs did not withdraw the FAC.   On January 16,

2013, Citrin filed the Second Sanctions Motion with the Court.[148]

On May 20, 2013, Judge Swain issued an Order which permitted

Plaintiffs to withdraw the FAC and amend their complaint for a *final* time.[149]  The

Order also terminated the Second Sanctions Motion, without prejudice to renew

against the SAC.[150]

On July 1, 2013, Plaintiffs filed the SAC.  On July 22, 2013, Citrin

sent a letter to Plaintiffs, describing the deficiencies in the SAC and Citrin's intent

to move to dismiss it.[151]  On July 24, 2013, Citrin and Plaintiffs participated in a

telephone conference, but Plaintiffs declined to amend, withdraw, or abandon the

SAC.[152]  On August, 22, 2013, Citrin filed the Third Sanctions Motion, without

---

[147]    *See id.* at 2; 12/21/12 Certificate of Service, Doc. No. 42.

[148]    *See* Third Sanctions Mem. at 2.

[149]    *See* 5/20/13 Order at 2 (emphasis added).

[150]    *See id.*  Judge Swain's Order did not state that Citrin would be
excused from complying with the safe harbor requirement if it renews its motion.
*See Lawrence v. Richman Group of CT, LLC*, 620 F.3d 153, 159 (2d Cir. 2010)
(stating that defendant may not ignore Rule 11's safe harbor requirement even if he
perceives competing obligations under the Judge's scheduling directive and Rule
11(c)(2)).

[151]    *See* Third Sanctions Mem. at 2-3 (citing Watnik Aff. ¶ 7).

[152]    *See id.* at 3 (citing Watnik Aff. ¶ 8).  A review of the docket confirms
no certificate of service for the Third Sanctions Motion.

first serving the motion on Plaintiffs.[153]

Regardless of the merits of Citrin's motion, Citrin's failure to comply with Rule 11's safe harbor requirement bars any award of sanctions.[154] The Second Circuit has held that "the filing of an amended pleading resets the clock for compliance with the safe harbor requirements of Rule 11(c)(2) before a party aggrieved by the new filing can present a sanctions motion based on that pleading . . . ."[155] Here, Citrin served Plaintiffs with the Second Sanctions Motion — directed toward the FAC — on December 16, 2012, but the clock was reset when Plaintiffs filed the SAC. Therefore, Citrin was required to serve Plaintiffs with the Third Sanctions Motion twenty-one days before the August 22, 2013 filing. Neither Citrin's letter nor the teleconference can substitute for serving the motion as required by Rule 11.[156] Therefore, Citrin's motion must be denied.

---

[153]    *See id.*

[154]    *See Williamson*, 542 F.3d at 51(affirming district court's denial of Rule 11 motion where defendants "failed to make a separate motion for sanctions under Rule 11"); *Perpetual Sec., Inc.*, 290 F.3d at 142 (reversing imposition of Rule 11 sanctions because "appellees did not serve their [Rule 11] motion on Perpetual prior to filing it with the court").

[155]    *Lawrence,* 620 F.3d at 158.

[156]    *See Star Mark Mgmt., Inc . v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) ("[A]n informal warning in the form of a letter without service of a separate Rule 11 motion" does not satisfy Rule 11's procedural requirements); *Castro*, 727 F. Supp. 2d at 308 (holding that any

32

## VI.   CONCLUSION

For the foregoing reasons, Citrins' motion to dismiss is granted and its motion for sanctions is denied.  Because Plaintiffs have amended their complaint twice and have not requested leave to amend again, this dismissal is with prejudice as to the RICO and CFAA claims.[157]  Plaintiffs may re-file their state law claims in state court.  The Clerk of the Court is directed to close this motion and this case (Docket Nos. 81 and 91).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 19, 2013

statement by counsel or even the judge at the pre-trial conference was insufficient to qualify as defendants' compliance with the safe harbor requirement).

[157]      As a general principle, district courts should freely grant a plaintiff leave to amend the complaint. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 156 (2d Cir. 2013).  Nonetheless, the Second Circuit "will not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought." *Nakahata*, 723 F.3d at 198.  Moreover, Judge Swain ordered that the SAC would be Plaintiffs' "final" amended complaint. *See* 5/20/13 Order.  The SAC contains more unsupported allegations based on "information and belief" than the FAC, and there is no reason to believe that granting leave to amend the complaint a third time would be productive. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

33

## - Appearances -

**For Plaintiffs:**

Scott L. Silver, Esq.
David C. Silver, Esq.
Jason S. Miller, Esq.
11780 W. Sample Road
Coral Springs, FL 33065
(954) 755-4799

Russell M. Yankwitt, Esq.
Craig M. Cepler, Esq.
Yankwitt, LLP
140 Grand St., Suite 501
White Plains, NY 10601
(914) 686-1500

**For Defendant Citrin:**

John K. Crossman, Esq.
Frank C. Welzer, Esq.
Scott J. Watnik, Esq.
Zukerman, Gore, Brandeis &
Crossman, LLP
Eleven Times Square
New York, NY 10036
(212) 223-6700